## INHABITANTS OF NEW PORTLAND *versus* INHABITANTS OF KINGFIELD.

In assumpsit by one town against another for supplies furnished an alleged pauper, parol evidence that certain persons (named) were acting overseers of the poor of the plaintiff town, when the supplies were furnished, is admissible.

So is the testimony that the pauper, at the time it is stated he fell into distress, called at the residence of one of the overseers, and, inquiring for him, sat down and cried while waiting for the overseer's return from his field.

So is the testimony of a physician, descriptive of a disease upon the pauper, unfitting him for labor.

Where, upon the issue of the alleged pauper's "need of relief," the testimony of several witnesses, called by the plaintiffs, tended to establish the affirmative, while that of C. T., introduced by the defendants, tended to prove the contrary, it is competent for the plaintiffs, without first interrogating C. T. as to the subject matter, to prove that C. T. had, when speaking of the action, declared " she would do all she could to help the defendants, she'd be damned if she would'nt."

The defendants had introduced testimony tending to prove that the supplies furnished by the plaintiffs, May 1, 1861, were collusively furnished; — *Held*, that the presiding Judge properly instructed the jury — that, as the plaintiffs' testimony showed that the alleged paupers had had their home in the

Inhabitants of New Portland *v.* Inhabitants of Kingfield.

plaintiff town, since May, 1856, the burden of proof was on the plaintiffs to show that, before the lapse of five years from that time, they had become destitute and in need of relief, and had received necessary supplies as paupers; otherwise their settlement would be in the plaintiff town; that if the plaintiffs had satisfied the jury of these facts, and that such supplies were furnished and received, the presumption was, in the absence of evidence to the contrary, that the transaction was in good faith; and that, if the defendants claimed that there was bad faith on the part of the overseers of the plaintiffs, and that the supplies were furnished collusively and by the contrivance of the overseers to prevent their gaining a settlement in the plaintiff town, the burden of proof was upon the defendants to show it.

ON EXCEPTIONS.

ASSUMPSIT for supplies furnished John Stevens and wife, (alleged paupers,) from Dec. 8, 1864, to Feb. 14, 1866, date of the writ. Specifications of defence denied each allegation in the writ in detail.

The facts are sufficiently stated in the opinion.

*D. D. Stewart,* for the plaintiffs.

*J. H. Webster,* for the defendants.

1. Plaintiffs should have been required to prove the election and qualification of their overseers by the record, which was in their possession. *State* v. *Williams,* 25 Maine, 561; *Christ Church* v. *Woodward,* 26 Maine, 172; *Allen* v. *Archer,* 49 Maine, 346; *Fossett* v. *Bearce,* 29 Maine, 523; *Bearce* v. *Fossett,* 34 Maine, 575; 2 Greenl. on Ev., §§ 63 and 64.

2. Huldah Lane's testimony is inadmissible, as it did not tend to contradict Catherine Tufts. Nor was Catherine interrogated about the statement testified to by Mrs. Lane. 1 Greenl. on Ev., § 462 and note; *Ware* v. *Ware,* 8 Greenl., 42; *Cooley* v. *Norton,* 4 Cush., 93; 1 Greenl. on Ev., § 450.

3. The instruction was erroneous. Good faith is one of the elements necessary for plaintiffs to show affirmatively. They have the affirmative. 1 Greenl. on Ev., § 7; *Phelps* v. *Cutler,* 4 Gray, 139; *Powers* v. *Russell,* 13 Pick., 69, 70; *Crowningshield* v. *Crowningshield,* 2 Gray, 524–9;

*Central Bridge* v. *Butler*, 2 Gray, 132; *Spaulding* v. *Hood*, 8 Cush., 605 – 6.

TAPLEY, J. — This was an action to recover for supplies furnished to John Stevens and wife as paupers.

At the trial various objections were raised to the admissibility of evidence and exceptions were also taken to certain rulings of the presiding Judge.

I. The plaintiffs proved by parol that Alvah Thompson, John P. Hodsdon and Sullivan Williamson, were acting overseers of the poor, in May, 1861, at the time the supplies were furnished. The defendants objected to this evidence as incompetent, and required the record proof of their election. The Court overruled the objection and admitted the evidence.

It is now contended this was error on the part of the presiding Judge.

Mr. Greenleaf, in his first volume of Evidence, § 83, says, " proof that an individual has acted notoriously as a public officer, is *prima facie* evidence of his official character, without producing his commission or appointment."

Again, in the same volume, § 92, he says, " from the strong presumption arising from the undisturbed exercise of a public office, that the appointment is valid, it is not, in general, necessary to prove the written appointment of public officers. All who are proved to have acted as such are presumed to have been duly appointed to the office until the contrary appears ; and it is not material how the question arises, whether on a civil or criminal case, nor whether the officer is or is not a party to the record ; unless, being plaintiff, he unnecessarily avers his title to the office or the mode of his appointment.

These propositions are sustained by him by reference to numerous decided cases in the several State Courts, under the United States Court, and is the rule of practice observed in this Court for many years.

The presiding Judge committed no error in admitting the testimony complained of.

II. "Rosanna Thompson, wife of Alvah Thompson, one of the acting overseers of New Portland, called by the plaintiff testified that Stevens came to our house in the after part of the day, about the first of May, 1861. He inquired for my husband. I told him he was in the field. He wanted to see him and waited for him. Went out into the dooryard and sat on a log. He sat with his head down wiping his eyes with his handkerchief. He remained until Mr. Thompson came up, 10 or 15 minutes." "This testimony was seasonably objected to but admitted by the Court."

Dr. Stevens testified to the physical condition of the pauper a number of years before, describing a disease which he regarded as incurable and preventing him from performing any amount of hard labor, and testified to the existence of the same difficulty at a period subsequent to the commencement of the action.

Hiram Williams testified to the destitute condition of the pauper in the spring of 1861. The testimony of these witnesses was also objected to, but admitted.

It is now argued that this testimony was irrelevant and calculated to mislead the jury by exciting their sympathy.

One ground of defence assumed by the defendants, was, "that the said John and Sarah Stevens had not fallen into distress in manner and form as alleged, and they denied that the several articles and sums of mony specified in the account annexed to plaintiffs' writ were necessary to the immediate relief of said persons, and required proof that they were necessary."

This was an important issue in the case, and, unless the plaintiffs sustained it their case must fail. To aid in establishing the contested point, the plaintiffs had a right to resort to such circumstances as tended to prove the issue, and we think the testimony of each of these witnesses have some tendency to establish the contested point. The testimony of Mrs. Thompson tends to show an application for relief. That of Dr. Stevens, an incapacity to labor, strengthening the testimony of others concerning his actual condi-

tion; showing one of the causes which had brought him to the unfortunate condition of asking aid of the town. That of Williamson tended to show his actual condition immediately before the supplies were furnished. The relation of the condition of this aged couple, being about eighty years of age, may have excited the sympathy of the jury for *them*, but how it could operate to prejudice the cause between these parties litigant has not been made to appear. We think this evidence was properly admitted.

III. The defendants called one Catherine Tufts, who testified "that the persons alleged by the plaintiffs to be paupers, first of May, 1861, were then in comfortable condition; that she was at their house about the middle of May, 1861, and saw pork, and flour, and potatoes, and other supplies there; that she was at Stevens' quite often in the spring of 1861, and eat at their table, and gave other testimony of a similar character."

The plaintiffs called Huldah Lane, who testified, "that she knew Catherine Tufts and had heard her speak of this matter, and, being asked what she said, the defendants' counsel objected, but the objection was overruled, and she testified" "that said Catherine came to her brother's about two years ago and said she would do all she could to help Kingfield, she'd be damned if she would not."

Two objections are now presented to this ruling. First, that it did not tend in any way to contradict Catherine Tufts, and second, Catharine was not herself asked when upon the stand anything about such statement.

Testimony might have been introduced and admitted for the purpose of showing the bias under which the witness was testifying, and thus affect the credit to be attached to her statements, especially when found to be in conflict with the testimony of other witnesses.

In some States it has been the practice of the courts to require interrogation of the witness sought to be impeached, upon the questionable matter, before introducing the impeaching evidence.

The practice in this State, however, has been otherwise for a long series of years. In 1831, in the case of *Ware* v. *Ware*, 8 Greenl., 42, it was declared to be the practice of this and the Massachusetts Courts not to require the previous interrogation.

The admission of this testimony was in accordance with the long established practice of the Courts in this State and Massachusetts, based upon principles then deemed to be sound and just, and we perceive no reason now why the practice should be changed.

IV. Evidence had been adduced in the case, by the defendants, for the purpose of showing that the supplies furnished by the plaintiffs, the first of May, 1861, were collusively furnished.

The Court instructed the jury "that, as the plaintiffs' own testimony showed that the alleged paupers had had their home in New Portland since May 18, 1856, the burden of proof was on the plaintiffs to show that, before the lapse of five years from that time, they had become destitute and in need of relief, and had received necessary supplies as paupers, otherwise their settlement would be in New Portland; that, if the plaintiffs had satisfied the jury of these facts and that such supplies were furnished and received, the presumption was, in the absence of evidence to the contrary, that the transaction was in good faith, and that, if the defendants claimed that there was bad faith on the part of the overseers of New Portland, and that the supplies were furnished collusively, and by the contrivance of the overseers, to prevent their gaining a settlement in New Portland, the burden of proof was upon them (the defendants) to show it."

The defendants contend that this instruction was erroneous, and say "that good faith is one of the elements necessary for the plaintiffs to show on their part."

We do not understand the instruction given to be in conflict with this proposition of the defendants.

The instruction required the plaintiffs to prove, as matter

of fact, that, before the lapse of five years from May 18, 1861, the alleged paupers had become destitute and in need of relief, and had received necessary supplies as paupers.

The legal proposition there stated was, that these facts being proved, the presumptions of law attending them were such, that it afforded sufficient evidence of good faith, in the absence of evidence to the contrary.

The fact that good faith must appear, was not denied, but the Court asserted what would afford sufficient proof of it until the contrary appeared.

In this we think the presiding Judge was clearly right.

Fraud, wrong and covin are never presumed. All men are presumed to be innocent of such practices until the contrary appears.

The law presumes that official persons, in the performance of their duties conduct legally, until there is proof to the contrary. *Treat* v. *Orono,* 26 Maine, 217.

*Exceptions overruled.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and BARROWS, JJ., concurred.