## PEOPLE *v.* BROOKS.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

1. CRIMINAL LAW—IMPEACHMENT OF HOSTILE WITNESS.
    Where the court, in a criminal case, refuses to permit defendant, as a witness in her own behalf, to testify as to transactions between herself and a witness for the people, for the purpose of showing animosity on the part of such witness towards defendant, such refusal being placed on the ground that such testimony of defendant was not rendered competent by the cross-examination of the hostile witness, it is not prejudicial to defendant, where it appears that the relations between the witness and defendant had been shown by other evidence of defendant and of the witness.

2. SAME—INSTRUCTIONS—CHARACTER OF DEFENDANT.
    On an indictment for arson, the court charged that evidence of good character of defendant in a criminal case is to be added to the presumption of innocence, and is positive testimony in his behalf, but that it was not a bar to a conviction, as the presumption might be overcome; and if defendant's character "has been shown to be good, yet if the evidence in the case * * * shows corruptness, fraudulent practice, bad heart, dishonesty, fraud, it rebuts, so far as it goes, the reputation for good character; that is to say, positive testimony of the commission of a crime extinguishes it altogether, if you believe the testimony." Defendant's good character was shown by several witnesses, who did not appear to have been contradicted. *Held,* that there was no prejudicial error in such instruction, where the court had already charged that defendant was presumed to be innocent, and that the jury should acquit in case they had a reasonable doubt as to defendant's guilt, though the evidence pointed to the guilt of defendant, and that good character might be sufficient to raise such doubt.

3. SAME—APPEAL—OBJECTIONS NOT RAISED BELOW.
    A conviction in a criminal case will not be disturbed on appeal on the ground that the district attorney made improper and prejudicial remarks before the jury, where the district attorney denies that he made such remarks, and no exception was taken by defendant.

Appeal from court of sessions, Onondaga county.

Rachel Brooks was indicted for arson in the first degree. On the trial, after the defendant, who was called as a witness in her own behalf, had testified that a personal affray occurred between herself and Charlotte Brooks, who was a material witness for the people, the following questions were asked by the defendant's counsel: "Now, state whether or not Charlotte was friendly with you or unfriendly. (Objected to as incompetent.) *The Court.* That is pretty general,—any evidence of unfriendliness. *By Mr. Goodelle.* Did you and Charlotte have frequent difficulties during that time? (Objected to as incompetent.) *The Court.* You had the witness here, and can ask any-

thing she has testified in regard to, and if you don't think she has told the truth, you can ask the witness about it, and I think that is as far as you can go. *Mr. Goodelle.* As I said before, I cannot be mistaken. It seems to me, under the rule, that it is always competent to show by third parties, or by the parties themselves, feeling or ill will against a witness who swears against another. It would be competent for me to call other witnesses in this case to show what Charlotte said against Mrs. Brooks, and would indicate her feeling as a question of motive. I cannot be mistaken as to that rule. I wish the stenographer would take my objection to this. And, that being the case, much more is it competent to show the act of the party, which is always stronger than the declaration of the party, which indicates ill will or hostility. Now, it is with that view that this evidence is offered. I do not offer it to contradict Charlotte. I offer it as evidence in chief in this case on the part of the defense, and that the jury may see that the principal witness in this case who has testified against Mrs. Brooks testifies from feelings of enmity towards her. *The Court.* I think the rule is this: That a witness may be cross-examined as to his or her attitude of mind in regard to the defendant, and his attention must be called to each and all the transactions upon which the counsel for the defendant desires to give evidence. If the witness admits the acts and declarations that the defendant claims were made and done, that is the end of it. If the witness denies, then I think it is competent to call other witnesses to contradict those matters; but to let a witness go off the stand, not having questioned the witness as to the particulars, and then calling third parties to prove independent transactions showing the attitude of the mind of the witness towards the party, I think is not the rule. So I have allowed and do allow this witness to testify as to any transactions bearing upon that point in regard to which the witness Charlotte was examined. *Mr. Goodelle.* And that is the extent to which you allow the defendant to go? *The Court.* That is the rule which I should apply in regard to any question which should be put. *Mr. Goodelle.* I take an exception to the ruling. *The Court.* And I should say, further, that the witness referred to is in court now, so that there is no loss to the defendant by the application of the rule as I understand it. *Mr. Goodelle.* Mrs. Brooks, did Charlotte assault you on other occasions, but a short time previous to this fire? (Objected to upon the ground that the attention of the witness Charlotte ought to have been brought to it, and it is incompetent as evidence in this case.) *The Court.* Of course, the application of the rule as I have stated it, and as I understand it, would exclude that, unless her attention was called to it. Do you say the attention of Charlotte was called to that point? *Mr. Goodelle.* The attention of Charlotte was called in this way: If your honor will remember that, Charlotte put it that every rainy day they had trouble; that it was their custom to have some trouble every rainy day. That was about as far as I could get the witness to go upon that question. *The Court.* Did you put the question involving any specific occasion? *Mr. Goodelle.* I think not, except the one to which she has already testified when Mr. Lacy was there. *The Court.* Then I will exclude the question, and sustain the objection. (Exception taken by the defendant's counsel.) *Mr. Goodelle.* The purpose being to show the *animus* of the witness Charlotte towards the defendant at about the time at which Charlotte claims Mrs. Brooks said to her that she was going to set the store on fire. That is the purpose of the testimony. *The Court.* Yes; I understand."

The court in its charge instructed the jury as follows: "The question of good character—we mean by that reputation—is one that enters into a case. Where a man is charged with a crime, and he has borne among his friends and neighbors—people who have known him in his daily life come in and say that his reputation among the people where he has lived has been good,—that is to be taken into account in his favor; it is to be added to the presumption

of innocence, and is positive testimony in his behalf. Well, does that mean that no man shall be convicted of crime who has previously borne a good reputation,—indeed, who has never been known to have committed any crime or done any wrong? Not at all. It does not mean that, but it means that we find by experience that men do not suddenly go all wrong, and commit some crime. It is a sort of presumption that if a man had been upright, borne a good character, been honest and upright among his friends and neighbors, for a course of years, that it is not to be expected that he will lapse into crime. Well, it would hardly be just to the law, or to this proposition of law, to say that that stands in the way of the conviction of a man of crime who has heretofore borne a good reputation. You should be more careful when you find such a man in saying that he has gone all wrong, and committed a crime, then you should in the case of a man who is shown positively, by positive testimony, to have been a criminal before, and in the trial of a case, if that reputation has been shown to be good,—or ' character ' is the word used, has been shown to be good,—yet if the evidence in the case on the trial of the case,—the evidence shows corruptness, fraudulent practice, bad heart, dishonesty, fraud,—it rebuts, so far as it goes, the reputation for good character; that is to say, positive testimony of the commission of a crime extinguishes it altogether, if you believe the testimony." At the conclusion of the charge, the defendant's counsel said: "The charge is very satisfactory, and I do not rise to find any fault with it. Your honor has charged that if the jury find that there is a reasonable doubt that they must acquit. Now, I ask your honor to charge that good character may be sufficient to raise that reasonable doubt which requires the jury to acquit. *The Court.* I charge that. *Mr. Goodelle.* I have simply one exception to take to your honor's charge. Do you desire me to take it at this time? *The Court.* Yes. *Mr. Goodelle.* Your honor charged that if, on the trial of a case, it is shown that the person has been corrupt and guilty of fraudulent practices, it rebuts the evidence, and the importance attached to it of good character,—is an answer to it. I do not give your honor's precise language, but that, in substance, and what your honor did charge upon that question, and all, I take an exception. *The Court.* Yes. *Mr. Goodelle.* And, furthermore, I ask your honor to charge that these remarks are not applicable to this case. *The Court.* I refuse to charge that,—to say that. (Exception taken by defendant's counsel.)"

Six witnesses testified on the trial that they knew the defendant, and knew her reputation and character in the neighborhood where she resided, and that her character was good. Upon the motion for a new trial the affidavits of William P. Goodelle, Frank Hopkins, Louis Marshall, and Harry Brill were presented, stating that the district attorney, while engaged in addressing the jury on behalf of the people, among other remarks made the following: "This woman belongs to a race that worships money as it worships its Jehovah. As its golden calf was raised by the Israelites of old, it has been held aloft ever since. Give me money if I peril my own soul and my own salvation! Any doubt about it? Is there any doubt that that woman loves the gold that her race loves?" The affidavit of the district attorney was also read, which, in effect, denies the use of the language attributed to him, and states that what was said was in answer to the argument of the defendant's counsel. No objection or exception was taken by the defendant's counsel to the remarks of the district attorney. The absence of such exception is sought to be explained by the defendant's counsel upon the ground that the remarks were made before an objection could be interposed. Defendant was convicted and sentenced to 15 years' imprisonment in the Onondaga penitentiary, and from the judgment of conviction, and from an order denying a motion for a new trial, defendant appeals.

Argued before MARTIN and MERWIN, JJ.

*Louis Marshall,* for appellant. *B. J. Shove,* for the People.

MARTIN, J. The appellant challenges the validity of the judgment and order appealed from on the following grounds only: (1) That the court erred in refusing to permit the defendant to testify that she and the witness Charlotte Brooks had other difficulties than those testified to by her, until the witness was interrogated as to the matters sought to be proved. (2) That it erred in its charge to the jury as to the effect to be given to the evidence of the good character of the defendant. (3) In not granting a new trial because of the comments made by the district attorney as to the defendant, her race, and its love of money. The rule laid down by the court to the effect that a witness may, upon cross-examination, be asked any question tending to show bias or ill feeling towards an adverse party, and, if he denies the facts suggested, may be contradicted, but that he may not be contradicted unless the witness has first been examined on the subject, seems to be in accordance with the rule laid down by the text-writers. Starkie, Ev. 213; Whart. Ev. § 566; Steph. Dig. Ev. 186; Tayl. Ev. § 1440 *et seq.;* 1 Greenl. Ev. § 450. The cases are not in harmony upon this subject. In some the doctrine stated is held, (*Queen's Case,* 2 Brod. & B. 311; *Edwards* v. *Sullivan,* 8 Ired. 302;) while in others it is held that such proof may be given without a previous cross-examination, (*New Portland* v. *Kingfield,* 55 Me. 172; *Martin* v. *Barnes,* 7 Wis. 239; *Day* v. *Stickney,* 14 Allen, 255, 258.) Although there are many cases where it has been held that evidence of this character is admissible, an examination discloses that in most of them the witness has been first interrogated upon the subject, and hence the question whether the witness must be first cross-examined has not been involved. There is, however, no doubt but that the rule applied by the court in the case at bar has been generally followed in practice. It may perhaps be inferred from some of the cases cited by the appellant that the rule in this state is that such proof may be given without first cross-examining the witness. *Starks* v. *People,* 5 Denio, 106; *Schultz* v. *Railroad Co.,* 89 N. Y. 242; *People* v. *Thompson,* 41 N. Y. 6; *Hotchkiss* v. *Insurance Co.,* 5 Hun, 90; *Starr* v. *Cragin,* 24 Hun, 177; *Campbell* v. *Campbell,* 54 N. Y. Super. Ct. 381. As it is always competent to show that a witness produced on the trial of an action is hostile in his feelings towards the party against whom he is called to testify, or that he entertains malice towards the party, (*Schultz* v. *Railroad Co., supra,*) it is difficult to perceive any good reason why he should be required either to prove that fact by the hostile witness, or first obtain a denial of the fact by him before proving it by other evidence. The reason assigned by the authorities maintaining that doctrine is that the witness should be first cross-examined on the subject so as to give him an opportunity for explanation. The logic of this doctrine is not apparent. We can see no good reason why a party should not be permitted to show the hostility and ill feeling of a witness by such proof as he may have, and, if the witness desires to explain, why he should not do so on the examination of the party calling him, rather than on the examination of the party to whom he is adverse. But, be that as it may, we do not think the rejection of the evidence offered constituted such an error as to require a reversal of the judgment. The difficulties that had occurred between the defendant and the witness were material only so far as they showed that the relations between them were unfriendly, and this was abundantly established by the evidence of the defendant as well as by the cross-examination of the witness.

Nor do we think that the exception to the charge of the court requires us to disturb the judgment. The court, in effect, charged that the proof of good character was not necessarily a bar to a conviction; that it created a presumption in favor of the prisoner, but that such presumption could be overcome by evidence of crime; and, as illustrative of that principle, said that positive evidence, if believed by the jury, would overcome the presumption arising from good character. The court had already, in substance, charged

that the defendant was presumed to be innocent; that in case they had a reasonable doubt as to her guilt they should acquit, although the evidence and circumstances pointed to the guilt of the prisoner, and that good character might be sufficient to raise such a doubt. Taking the whole charge together, we are unable to see any error in it that was prejudicial to the appellant. *People* v. *Sweeney*, 13 N. Y. Supp. 25.

This leaves for consideration the question whether the court erred in refusing to set aside the verdict and grant a new trial on account of the remarks of the district attorney as to the defendant, and the race to which she belonged. While it may well be said that, if the district attorney made the remarks attributed to him, his course in that respect is not to be commended, still, as he in effect denies the making of the statement as charged, and as no objection or exception was taken by the defendant's counsel, who was present at the time, we think we should not upon that ground disturb the order made by the learned county judge. As we find no errors that were prejudicial to the appellant, it follows that the judgment and order should be affirmed. Code Crim. Proc. § 542. Judgment and order affirmed.

MERWIN, J., concurred in the result.