Archer *v.* The State.

No. 13,114.

ARCHER *v.* THE STATE.

CRIMINAL LAW.—*Murder.—Jurisdiction where Crime is Commenced in One and Consummated in Another County.— Conspiracy.—Constitutional Law.*— Where a person is seized and bound in one county, in pursuance of a conspiracy and purpose to kill there formed, and taken into another county where the murder is consummated, either county, under section 1580, R. S. 1881, has jurisdiction to punish the crime. Such statute is constitutional.

SAME.—*Proof of Conspiracy by Circumstantial Evidence.*—A conspiracy may be proved by circumstantial evidence alone.

SAME.—*Conviction on Testimony of Accomplice.*—A conviction of murder in the first degree will be sustained upon the testimony of an accomplice, where it is corroborated.

From the Martin Circuit Court.

*E. Moser* and *H. Q. Houghton,* for appellant.

*F. T. Hord,* Attorney General, *H. McCormick,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ELLIOTT, J.—The appellant was jointly indicted with eight others for the murder of Samuel A. Bunch. The State elected to try the appellant separately, and the trial resulted in a judgment declaring him guilty of murder in the first degree and adjudging that he suffer the penalty of death. The indictment was returned by the grand jury of Martin county, the trial was had in that county, and judgment was there pronounced.

The facts as we gather them from the evidence are these: Martin Archer, a kinsman of the appellant and of five of the persons indicted with him, was killed, as they believed, by Samuel Marley. Marley fled the country shortly after the death of Martin Archer, but the appellant and his kinsmen believed that Bunch, the deceased, harbored him and assisted him to escape. They watched the house of Bunch for several days and nights and received information which led them to believe that he had assisted Marley to flee, and this excited in them angry and revengeful feelings. They as-

Archer v. The State.

certained that Bunch, on the afternoon before his death, had gone to a secluded place to secure some of his hogs which had broken into the field of a neighbor named Ryan. They there forcibly seized and bound him with hickory withes. The place where he was seized and bound was in Martin county; he was detained at this place for some hours and then taken to a cave in Orange county called "Saltpeter Cave." This cave was about two miles distant from the Martin county line. The men who captured and bound him were armed with guns and pistols, and with these in hand and ready for instant use, they took him to the cave, where they shot him many times, each emptying the contents of his gun or pistol into his body. His body was left lying in the cave for some days when it was taken out and burned. From these circumstances, and from the declarations of the appellant and those who united with him in the murder of Bunch, it is evident that the capture was made pursuant to a preconceived plan to take his life. This conclusion is fully warranted by the evidence, and is undoubtedly that reached by the jury. The circumstances unite with great strength in proof of the fact that the seizure and binding of the deceased were part of a previously arranged plan, and that the appellant, with at least four others, joined in arranging and executing this plan. It is true that Lynch, who was present and assisted in killing Bunch in the cave, testified, when called as a witness by the State, that the purpose to kill the captive was not communicated to him until the cave was reached, but, nevertheless, the circumstances conclusively prove that the capture was made with the intention and purpose of taking the life of the captured man. Forcibly seizing and binding a man without legal excuse or justification, is an assault, and, if done for the purpose of carrying into execution a preconceived plan to murder the person so seized and bound, is an initial step in the crime. An assault is an element in the crime of murder, and the assault first made in this instance constituted an important step in the crime, for

it kept the victim within the power of his captors until the cave was reached on the night of his death.

The crime which culminated in the death of Bunch in the cave in Orange county was a single one, although composed of several elements, and the acts done in Martin county were not distinct criminal acts, but were parts of one crime consummated in the adjoining county. Suppose, for the sake of illustration, that a man is seized, bound and gagged in one county pursuant to a preconcerted plan; that, while he is thus helpless, he is taken to a cave in another county and there left to die, would it be doubted that the first act, the seizure and binding, was but a part of the crime of murder? There is no difference in principle between the supposed case and the real one, for, if the act is a material part of the crime, then, no matter where death results, the place of the crime, according to the weight of authority is, at common law, in the county where the first material act was committed. There is some conflict in the old common law authorities as to whether the jurisdiction is in the courts of the place where death occurred or in those of the place where the fatal blow was given, and in order to remove all doubt the body was sometimes taken to the county where the blow was struck. *Riley* v. *State*, 9 Humph. 646; *People* v. *Gill*, 6 Cal. 637; *State* v. *Gessert*, 21 Minn. 369; *Commonwealth* v. *Macloon*, 101 Mass. 1; *Commonwealth* v. *Parker*, 2 Pick. 550; *Tyler* v. *People*, 8 Mich. 320; *Green* v. *State*, 66 Ala. 40 (41 Am. R. 744); *Steerman* v. *State*, 10 Mo. 503; *Hunter* v. *State*, 40 N. J. 495.

If, however, the crime was committed in part in one county and consummated in another, jurisdiction, at common law, would seem to be in the county where the first material step in the crime was taken. Mr. Bishop says: "In reason and according to the better authorities, when a crime is really committed a part in one county and part in another, the tribunals of either may properly punish it; provided that what is done in the county which takes the jurisdiction is a sub-

stantial act of wrong, and not merely some incidental thing, innocent in itself alone." 1 Bishop Crim. Law (7th ed.), section 116. There was not only preparation in Martin county to commit the specific crime finally consummated in Orange, but there was an overt act forming a material part of the crime committed in the former county, and the parties would be indictable at common law in that county. Dynamiting and Extra-Territorial Crime, 6 Crim. Law. Mag. 155.

The acts done by the appellant and his associates were, we repeat, part of the crime ; they were material, and they were substantial wrongs, so that it would seem that, even at common law, jurisdiction would vest in the county where those acts were committed. We are not, however, to decide this case upon the rules of the common law, but upon the provisions of our statute, which read thus : " When a public offence has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offence occur in two or more counties, the jurisdiction is in either county." Section 1580, R. S. 1881.

The case before us comes within this statute, for the purpose to kill was formed in Martin county, the seizure and binding of the deceased took place there, the plan of carrying it into execution was there resolved upon, and was there so far executed as to deprive the deceased of his liberty and bring him within the power of those who designed to slay him. These were acts of a criminal character, constituting a part of the offence. Not only were they acts constituting a part of the crime, but they were also acts "requisite to the consummation of the offence," for it was the seizure of the deceased, and the power obtained over him by that seizure, that enabled the appellant and his associates to conduct him to the cave in Orange county, and there kill him. If it had not been for the capture in Martin county, the enemies of Bunch could not have taken him to the place where he met his death at their hands, and it was, therefore, the unlawful

seizure that enabled them to consummate the crime of murder according to the plan conceived by them. The capture in Martin county was as material to the consummation of the crime as almost any other step taken by the criminals, since it was the act which made it possible for them to take him to the place selected for slaying him. It was the act which put him in their power, and enabled them to take him from the county where he lived to the place chosen in another county, and there take his life, for, if the capture had not been effected, the felonious purpose must have been consummated, if at all, in the county of which he was a resident.

In construing and sustaining the validity of a statute similar to ours, it was said by the Supreme Court of Alabama, that: "If, then, we consider the fatal shooting of the deceased by the appellant as the commencement merely of the crime of murder charged in the indictment, and that the death of the injured person was the consummation of the offence in Georgia, the statute, conferring jurisdiction on the circuit court of Colbert county, the alleged venue was valid, and not obnoxious to legal objections." *Green* v. *State, supra.* So, here, if we consider the seizure and binding of the deceased as the commencement of the crime, the case is within the statute, but, here, we have the further element that the criminal assault upon the person of the deceased was essential to the consummation of the crime in the cave in Orange county, to which he was carried a captive by those who slew him.

If it be true that the unlawful seizure of the deceased in Martin county was part of the crime, then the constitutionality of the statute is clear, for there is no substantial diversity of opinion as to the power of the Legislature to provide what county shall have jurisdiction where a crime is committed in two counties, part being committed in each jurisdiction. There is, perhaps, some diversity of opinion as to whether a statute is constitutional which provides for the punishment of a crime in a county where no material part

of the crime was committed, but even upon this question the very decided weight of authority is that the Legislature may provide for the punishment of the crime in either of the two counties where any part of the crime is committed. *Tippins* v. *State*, 14 Ga. 422; *Steerman* v. *State*, 10 Mo. 503; *State* v. *Pauley*, 12 Wis. 537; *Commonwealth* v. *Parker*, 2 Pick. 550; *Tyler* v. *People*, 8 Mich. 320; *Commonwealth* v. *Macloon*, 101 Mass. 1; *State* v. *Johnson*, 38 Ark. 568; *Green* v. *State, supra; Hanks* v. *State*, 13 Texas App. 289; *Ham* v. *State*, 4 Texas App. 645; *Ex Parte Rogers*, 10 Texas App. 655; *Adams* v. *People*, 1 N. Y. 173.

In the case before us, we regard the assault upon the deceased in Martin county as an essential part of the crime and as "an act requisite to its consummation," and we do not doubt that the Legislature had power to provide for the punishment of the crime either in the county where it was commenced, or in the county where the last act was done. This power is often necessary in order to prevent an absolute failure of justice; nor is its existence doubtful, for it has ever been the law, illustrated and declared by a great number of cases, that a crime committed partly in one jurisdiction and partly in another may be punished in either jurisdiction. 1 Hale P. C. 426, 615, 617; *Regina* v. *Michael*, 9 C. & P. 356; *People* v. *Adams*, 3 Denio, 190, 207; *Bulwer's Case*, 7 Coke, 57; *King* v. *Burdett*, 4 B. & Ald. 95, 175; *Commonwealth* v. *Andrews*, 2 Mass. 14; *Commonwealth* v. *Holder*, 9 Gray, 7; *Simmons* v. *Commonwealth*, 5 Binney, 617; *Simpson* v. *State*, 4 Humph. 455.

We have had for many years a statute founded upon this principle, and its validity was sustained in *Beal* v. *State*, 15 Ind. 378. In a still more emphatic way is this principle recognized in *Kiser* v. *Woods*, 60 Ind. 538, where it was held that although the felonious intent, constituting as is well known an essential element of the crime of larceny, was fully formed in Ohio, yet, as it was not consummated by a taking until the property and the thief came into this State, the

·crime might be punished here.   The decided cases fully support this doctrine.   State v. Underwood, 49 Maine, 181 ; State v. Bartlett, 11 Vt. 650.   There is, as we understand the authorities, no real conflict of opinion as to the power of the Legislature to provide for the punishment of a crime partly ·committed in one jurisdiction and partly in another, in either jurisdiction, but there is a sharp conflict as to whether death ·can be said to be a part of the crime of murder, many of the authorities maintaining that death is merely the consequence of the crime ; many of the authorities, on the other hand, maintaining, with much reason, that death is a part of the crime, for, unless it results within a year and a day, the offence can not be murder.   Jurisdiction in Guiteau's Case, 2 Crim. Law Mag. 804.   But we have here no reason to enter upon this contested ground, as the acts committed in Martin county were substantive criminal wrongs, forming essential parts of the crime.

Felonious purpose or intent is seldom established by direct evidence, but in the very great majority of cases is inferred from circumstances.   Padgett v. State, 103 Ind. 550.   Circumstantial evidence is mainly relied on to prove this essential element in the crime of murder, but the character of the evidence is never deemed to impair or impeach the validity of the proof.   It is likewise true of the element of conspiracy, which is not unfrequently a constituent element of murder, that it is not usually proved by direct evidence, but is inferred from circumstances.   Dr. Wharton says : " The actual fact of conspiring may be inferred, as has been said, from circumstances, and the concurring conduct of the defendants need not be directly proved.   Any joint action on a material point, or a collocation of independent but cooperative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment."   2 Whart. Crim. Law (9th ed.), section 1398 ; Whart. Crim. Ev., section 698 ; 2 Bishop Crim. Proc., section 227.

The circumstances developed by the evidence satisfactorily prove that the conspiracy which bound the defendants together, as well as the purpose to kill which constituted the bond of union between them, was formed in the county of Martin, and these were undeniably parts, and very material parts, of the crime which was consummated in the adjoining county. Suppose that two of the persons who assisted in the seizure of Bunch had not crossed the line dividing the two counties, is it not perfectly clear, upon principle and authority, that they would nevertheless have been guilty of murder? This conclusion can not be successfully controverted, and yet it can only be true on the theory that part of the crime was committed in Martin county, for, unless this be so, it is clear that it could not be justly said that they participated in the crime. If what took place in Martin county was no part of the crime, those who did no more than conspire with the persons who fired the fatal shots and assist in placing the deceased in their power, could not be guilty; but if those acts did constitute part of the crime, they are guilty, and the crime had its origin in Martin county, where the first steps toward the accomplishment of the common purpose were taken. Our deliberate conclusion is that the acts done in Martin county did constitute part of the crime, and the court of that county had jurisdiction.

It is perhaps true that there is little direct testimony that the purpose to kill was formed in Martin county, or that the plan of seizing the deceased and conveying him to the cave in Orange county was there agreed upon, but the circumstances so strongly and directly point to this conclusion as to free the minds of all impartial men, who give it study, from any doubt upon this point, and circumstantial evidence, as we have seen, is all that is required. The evidence supplied by the circumstances leads to no other reasonable conclusion, and we think that there was abundant support for the verdict of the jury upon this point, and consequently ample evi-

dence warranting the instructions of the court.    Few cases can be more strongly made out than is this one, for the evidence supplied by the circumstances and the testimony given by the witnesses all unite in proving that the purpose to kill was conceived in Martin county, that the plan was there agreed upon and there partly executed by making a captive of the deceased.    The night journey across the line to the cave, and the shooting there, were but steps in the crime conceived and partly carried into execution in Martin county, and the court of that county committed no error in assuming jurisdiction.

What we have said disposes of all questions as to the jurisdiction and as to the instructions of the court upon these points, and they need not be discussed in detail.

It is true, as counsel assert, that the case against the accused depends in a great measure upon the testimony of John Lynch, a confessed accomplice and a man of bad character, but it is so strongly and fully corroborated upon all material points that we can not hold that the jury did wrong in giving it credit.    A conviction will be sustained upon the testimony of an accomplice where it is satisfactorily corroborated, and that is the case here.

The first step in the offence of murder in the first degree, the intermediate steps and the final act constitute but a single crime.    There are, indeed, few crimes that are not made up of many elements, or in which there are not many steps, but no matter how many elements or steps there are, there is but one crime.    This is true of the present case.    All the essential elements combined constitute but a single crime, and, in legal contemplation, that crime was perpetrated where any one of the substantive and material parts of it were committed.    If it were otherwise, a man in Martin county might deliberately conceive a felonious purpose to commit a crime, send another into Marion county to commit the overt act, and yet go free because it could not be said that all the elements of the crime were present in either county.    But it

is unnecessary to pursue this discussion, for it is clear upon principle and authority that a crime is committed in the county where an act constituting an essential element is done. Where the crime is composed of several elements, and a material one exists in either one of two counties, the courts of either county may, under our statute, rightfully take jurisdiction of the entire crime. We conclude, therefore, that the venue was well laid in Martin county and was satisfactorily proved.

