McKee v. The State.

No. 13,786.

## McKee v. The State.

CRIMINAL LAW.—*Conspiracy to Defraud.*—*Indictment.*—*Naming Parties to be Defrauded.*—It is not necessary to the sufficiency of an indictment charging a conspiracy to cheat and defraud " divers citizens of Randolph county " and the " public generally," by certain false and fraudulent representations, that the names of the persons against whom the conspiracy was directed should be set out.

SAME.—*Character of Pretences.*—*Question for Jury.*—In such a case, whether the alleged pretences were of such a character as to impose upon citizens of the community, as communities are actually constituted, is a question of fact for the jury to determine.

SAME.—*Protection of Weak and Credulous.*—The purpose of the law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves.

SAME.—*Renewal of Conspiracy.*—After the joint design is once fairly established, every act done in pursuance of the original purpose, whether by one or more of the conspirators, or their agent, is a renewal of the original conspiracy.

SAME.—*Agent of Conspirators.*—*Declarations of.*—*Evidence.*—One employed as agent by conspirators, after their criminal undertaking is on foot, to aid in the prosecution of their designs, may testify to false representations made by him and some of his associates while carrying forward the business of the undertaking, although made in the absence of the person on trial.

SAME.—*Employment of Agent to Commit Crime.*—*Liability of Principal.*—One who employs an agent to assist in the execution of a criminal act is as guilty of the acts of the person employed as if he himself had performed them.

SAME.—*Formal Agreement Not Essential to Formation of Conspiracy.*—It is not essential to the formation of a conspiracy that there should be any formal agreement between the parties to do the acts charged, but it is sufficient if the minds of the parties understandingly meet, so as to bring about an intelligent and deliberate agreement to do the acts, although not manifested by any formal words.

From the Randolph Circuit Court.

*T. Shockney, R. S. Gregory* and *A. C. Silverburg,* for appellant.

*L. T. Michener,* Attorney General, *S. A. Canada,* Prosecuting Attorney, *J. H. Gillett, W. A. Thompson, A. O. Marsh,*

*J. W. Thompson, B. F. Marsh, E. L. Watson, J. S. Engle* and *J. E. Watson*, for the State.

MITCHELL, J.—At the November term, 1886, of the Randolph Circuit Court, an indictment in three counts was returned by the grand jury of Randolph county, in which the appellant and three others were jointly charged, under section 2139, R. S. 1881, with having theretofore, designedly, etc., with intent, etc., unlawfully, feloniously, etc., conspired, etc., with each other, to obtain the signatures of divers citizens of the county of Randolph, and the public generally, to certain promissory notes, and to procure said citizens and the public generally to execute and affix their signatures to certain written instruments, and promises to pay money, etc., by means of certain representations which are set out, and which they agreed to make, and induce divers persons to rely upon, all of which representations, etc., so agreed to be made, it is charged, were false and fraudulent.

The second count of the indictment was quashed, after which, upon trial, the appellant was found guilty as charged in the first count, and his punishment fixed at two years imprisonment in the State's prison.

It is now contended that the count upon which the conviction was had is fatally defective, in that it fails to give the name or names of the persons to be defrauded, and fails to give any reason for the omission of such names.

The indictment charges a conspiracy to cheat and defraud "divers citizens of Randolph county," and the "public generally," by means of certain false representations and fraudulent devices, which were to be employed, and the question presented is, whether in a charge of conspiracy it is necessary to aver the names of the persons against whom the conspiracy is directed or who are thereby to be defrauded.

The authorities abundantly settle the proposition that an indictment is not objectionable which charges that the object of the conspiracy is to defraud many persons, not capable of

being resolved into individuals, or the public generally, instead of certain named individuals. 2 Bishop Crim. Law, section 209; 2 Whart. Crim. Law, section 1396.

In *Rex* v. *De Berenger*, 3 M. & S. 67, the charge was a conspiracy to defraud such subjects of the King as should make purchases in the public funds, when the price should be artificially advanced.

In *Clary* v. *Commonwealth*, 4 Pa. St. 210, an indictment which charged a conspiracy which had for its purpose the circulation of certain false and forged bills, with the intent to cheat and defraud "the citizens of this commonwealth and others," was held good. So, also, in *Commonwealth* v. *Judd*, 2 Mass. 329, a conspiracy to manufacture spurious indigo, and sell the same at public auction, with intent to cheat and defraud such persons as should become purchasers, was held sufficient. See, also, *People* v. *Arnold*, 46 Mich. 268; *Collins* v. *Commonwealth*, 3 S. & R. 220; *Reg.* v. *Peck*, 9 A. & E. 686.

Undoubtedly, if the nature of the conspiracy is such as to define the particular persons against whom it is directed, or if from the commission of overt acts the conspirators have actually accomplished their fraudulent purpose, so that the names of the victims are ascertainable by the pleader, the better method would be to allege the names of those actually defrauded. The necessities of the case may often, however, require that the general form of pleading adopted in the indictment before us should be sustained. The indictment was not bad for the reasons urged against it.

The false and fraudulent representations set out in the indictment, by which the alleged conspirators were to cheat and defraud divers citizens and the public generally, consisted in representing, among other things, that "The Indiana Seed Association" had been duly incorporated, and that the purpose of the association was the cultivation of certain kinds of wheat and Bohemian oats, and that the association was solvent, and had on deposit with the secretary of the

State of Indiana one hundred and fifty thousand dollars in cash, and a bond for a like sum, as an indemnity for all those who would purchase its merchandise. Other representations, such as that the association had the right to use the seal of the State on its contracts and bonds, that the State had guaranteed its obligations, and that the association would obligate itself to take double the number of bushels of wheat or oats purchased from it by any of its customers, and sell the same for ten dollars per bushel for oats and fifteen dollars per bushel for wheat, were also set out as part of the fraudulent scheme agreed upon in order to procure the signatures of divers citizens to promissory notes.

It is said that the representations were so unreasonable and of such a character, as that no person exercising reasonable caution would be warranted in believing them.

Whatever force this argument might have if addressed to a jury, upon the facts as they are alleged, it can hardly be allowed to prevail as a question of law. The design of the law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves. *Smith* v. *State*, 17 Am. L. Reg. 525; 16 Am. L. Reg. 321 (325).

Whether the alleged pretences were of such a character as to impose upon citizens of the community, as communities are actually constituted, was a question of fact to be left to the determination of the jury. *Miller* v. *State*, 79 Ind. 198; 2 Whart. Crim. Law, sections 1186-7-8; 2 Bishop Crim. Law, sections 433, 434.

It could serve no useful purpose to set out in detail any part of the evidence. The concession may be made that it shows that the appellant had for a quarter of a century or more stood in fair repute among his neighbors, and that, possibly, he inadvertently permitted himself to be made the instrument, more effectually to execute the designs, of professional swindlers, who have escaped their deserts. It must

also be remembered, however, that the appellant was a man ripe in years and in experience, having been a merchant and trustee of his township. It must have seemed incredible to the jury that, with his age and experience, he did not comprehend that the whole business was a fraud from beginning to end. At all events, a jury of his own selection, who heard all the evidence, after careful direction by a competent court have pronounced him guilty. As there was competent evidence which satisfied the jury we can not disturb their verdict on the weight of the evidence.

It appeared in evidence that one William D. Bailey was employed as agent of the association of which the appellant was a member. Bailey was employed after the association had been organized, and during the progress of its business, for the purpose of aiding in the prosecution of its designs. He was permitted, over objection, to testify to certain alleged false representations made by him, and other members of the association, while carrying forward its business with farmers and others to whom sales of Bohemian oats were negotiated. Others, to whom these representations were made, were permitted, in like manner, to testify concerning the character of the representations. It is insisted that the court erred in admitting this testimony, because it appeared that the declarations of Bailey were made subsequent to the conspiracy charged in the indictment, and in the absence of the appellant.

The relation of Bailey to the accused, and to those engaged with him in the alleged conspiracy, having been satisfactorily established, his acts and declarations in furtherance of the common design, while the conspiracy continued, were admissible against his associates, even though such acts and declarations were done and made in their absence. *Walton* v. *State*, 88 Ind. 9; *Williams* v. *State*, 47 Ind. 568; Moore Crim. Law, sec. 348.

After the joint design was once fairly established, every act done in pursuance of the original purpose, whether by one

or more of the conspirators, or by their agent, was a renewal of the original conspiracy.

When a common purpose to prosecute an unlawful scheme has been shown, the overt acts or declarations of any one, or all concerned, while engaged in the execution of such purpose, are admissible, as illustrating the design and establishing the character of the original confederacy.

One who employs an agent to assist in the execution of a criminal act, is equally guilty of the acts of the person employed, as if he had himself performed them. 1 Whart. Crim. Law, sec. 247.

The person so employed simply becomes a confederate in crime, and this is so whether he be employed at the beginning of the conspiracy or while it is in progress. The admissibility of the testimony of Bailey was in no wise affected by the fact that he was employed after the association was organized, or that the acts done and declarations made by him were done and made after its business was under way.

In one of its charges the court told the jury, in substance, that it was not essential to the formation of a conspiracy that there should have been any formal agreement between the parties to do the acts charged ; that it would be sufficient if the minds of the parties understandingly met, so as to bring about an intelligent and deliberate agreement to do the acts and commit the crimes charged, although such agreement was not manifested by any formal words.

The law was well and accurately stated in the foregoing charge, and the objections urged against it can not prevail.

Concurrence of sentiment, and co-operative conduct in an unlawful and criminal enterprise, and not formality of speech, are the essential ingredients of criminal conspiracy. *Archer* v. *State*, 106 Ind. 426 (432); 2 Whart. Crim. Law, sec. 1398.

We have considered the other instructions, concerning which some merely suggestive criticisms are made. They were not erroneous.

We have now examined all the alleged errors discussed in

the briefs. Our conclusion is that the appellant had a fair trial, without any intervening error, before an impartial jury. The judgment is affirmed, with costs.

