# COOK *v.* THE STATE.

[No. 20,783.   Filed December 10, 1907.]

1. EVIDENCE.—*Conspiracy.—Instructions.—Murder.*—On a joint indictment of several persons for murder, evidence of a conspiracy by the defendants is admissible against the defendant on trial, and instructions thereon are proper, though the indictment does. not charge that the murder was committed through a conspiracy. p. 432.

2. TRIAL.—*Instructions.—Conspiracy.—Circumstantial Evidence.*— The State, in a criminal case, is entitled to instructions on the law of conspiracy, though the evidence thereof is purely circumstantial.   p. 433.

3. SAME.—*Instructions.—Reasonable Doubt.—Presumption of Innocence.—Criminal Law.*—An instruction that the rule of reasonable doubt "throws around the defendant the presumption of innocence, and requires the State to establish, beyond a reasonable doubt, every material fact averred in the indictment" but that the rule was "not intended to shield those who are actually guilty from just and merited punishment," and that such rule is "for the protection of the innocent," is not misleading and does not authorize the jury to determine defendant's guilt before the benefit of the rule is extended to him.   p. 434.

4. SAME.—*Evidence.—Weight of, for Jury.*—The weight and probative force of circumstantial evidence is a question for the jury. p. 437.

5. EVIDENCE.—*Declarations of Co-conspirators.—Conspiracy.*—Declarations of co-conspirators are not ordinarily admitted in evidence against the accused until a *prima facie* conspiracy has been shown, though such conspiracy may be inferred from facts and circumstances proved, as well as by direct testimony thereof; but such proof may be introduced upon the prosecutor's undertaking to supply the proof of such conspiracy later in the trial.   p. 437.

6. SAME.—*Impeaching.—Contradiction.—Witnesses. — Hostility. —* On a trial for murder, a witness for the accused may be asked on cross-examination as to the state of her feelings toward the deceased, and, if she deny any hostility, may be impeached by showing contradictory declarations to others.   pp. 438, 441.

7. SAME.—*Ill·Feeling.—Competency.*—Evidence of the ill feeling or interest. toward deceased, of a witness in a murder case is admissible as independent evidence, going to the truthfulness of the witness's testimony.   p. 440.

8. APPEAL.—*Right Result.*—Where a case appears to have been fairly tried upon the merits, the judgment will be affirmed.   p. 441.

From Wells Circuit Court; *C. W. Watkins,* Special Judge.

Prosecution by the State of Indiana against William Cook. From a judgment of conviction, defendant appeals. *Affirmed.*

*Jay A. Hindman* and *Eichhorn & Matlack,* for appellant.
*Charles W. Miller,* Attorney-General, *W. C. Geake, C. C. Hadley* and *H. M. Dowling,* for the State.

JORDAN, J.—Appellant, William Cook, was, by a grand jury of Blackford county, indicted jointly with Ernest Sanderson, Otto Cook, Samuel Emery, Ollie Sanderson and Clara Smith, for having, on October 23, 1904, at Blackford county, Indiana, feloniously, purposely and with premeditated malice killed and murdered Edward P. Sanderson by shooting him with a certain revolver, then and there loaded, etc. He and each of his codefendants entered a plea of not guilty, and upon their motion the cause was venued to the Wells Circuit Court. In the latter court appellant was tried before a jury separately from the other defendants, and on March 3, 1905, a verdict was returned, finding him guilty of murder in the first degree as charged, and assessing his punishment at imprisonment in the state prison for life. A motion for a new trial, assigning therein many reasons, was denied, and judgment was rendered by the court upon the verdict. From this judgment he has appealed, and assigns as error the overruling of his motion for a new trial. He relies for a reversal upon the giving by the trial court of instructions claimed to be erroneous, upon the wrongful admission of certain evidence, and, finally, on the ground that the verdict of the jury is not supported by sufficient evidence and is contrary to law.

The case of Ernest Sanderson, a codefendant of appellant, was heard and determined by this court (*Sanderson* v. *State* [1907], *ante,* 301), and his conviction for the same offense and upon the same indictment was affirmed. The evidence in that appeal is in many respects substantially the

same as that involved in the case at bar, as are also some of the rulings of the lower court. The facts as set out in that appeal will fully serve to show many of the facts in the case now before us, and also the relationship of appellant to his several codefendants, and his and their relation to the deceased, Edward P. Sanderson; also a history of the murder and the concealment of the dead body in the pond hereinafter mentioned. The evidence in this case tending to sustain the conspiracy issue herein is, in the main, identical with that in the case just cited. Therefore it is not essential that we restate all the facts as they appear in this appeal so far as the same are disclosed in the court's opinion in the latter case. The theory of the State in this prosecution is the same as advanced in that case, which is that appellant herein and his several codefendants conspired together for the purpose of unlawfully obtaining possession of the property owned by the deceased, and that the furtherance of such purpose resulted in the murder. Counsel for appellant assail the rulings of the trial court in giving to the jury instructions forty-two, forty-three, forty-five and forty-six, on the ground that they were not authorized, because the indictment does not expressly charge appellant and his codefendants with the conspiracy in controversy, and therefore it is argued that the instructions in dispute were not relevant to any issue in the case. By the charges in question the court advised the jury in regard to the principles of law relating to conspiracy and their application to that question as the same is involved under the evidence in this case. As shown, the indictment charges appellant and his codefendants jointly with having committed the crime of murder. There is an entire absence therein of any express allegation or charge of a conspiracy upon the part of the defendant. Such a charge in the indictment, however, was not necessary in order to authorize the State to introduce evidence upon the issue of conspiracy as raised by it upon its theory of the case, or to permit the

court to give instructions relative to such issue. It is true that in a case in which the prosecution is based upon a conspiracy as the real offense committed it is necessary that the conspiracy be expressly charged in the indictment before it can become an issue or question in prosecution. But in the case at bar the real offense for which appellant and his codefendants were indicted and prosecuted was not a conspiracy, but was murder, and the allegations in the indictment showing that this crime was committed jointly by the parties therein named was sufficient to authorize the State to introduce any competent evidence to prove or sustain the conspiracy in controversy which the State claimed or advanced upon its theory, and authorized the court to give to the jury the instructions called in question. *Reed* v. *State* (1897), 147 Ind. 41; *Goins* v. *State* (1889), 46 Ohio St. 457, 21 N. E. 476; *Kelley* v. *People* (1874), 55 N. Y. 565, 14 Am. Rep. 342; *State* v. *Munchrath* (1889), 78 Iowa 268, 43 N. W. 211; 3 Ency. Evidence, 420.

Counsel further argue that the instructions were not proper or applicable, for the reason that the State had failed by its evidence to show any conspiracy on 2. the part of appellant and his codefendants. It is true that the evidence in the case going to show this issue was mainly circumstantial. There are, however, many circumstances, as well as other evidence, tending to prove that there was a common design or preconcerted arrangement on the part of appellant and his coconspirators to secure possession of the property of the deceased, and that this led up to the commission of the murder. The State, under the evidence, was entitled to support its theory in the case by any and all competent evidence, and to have the trial court, by proper instructions, fully to advise the jury upon the law relative to its theory of the case as presented by the evidence. *Banks* v. *State* (1901), 157 Ind. 190. In Hughes, Instruc-

tions to Juries, §88, the author says: "Where there is some
evidence, though slight, tending to prove a conspiracy, that
issue should be submitted to the jury by proper instruc-
tions."

The court, among its instructions given in respect to the
rule of reasonable doubt in a criminal cause, in stating the
purpose of this rule said: "The rule throws around
3.  the defendant the presumption of innocence, and re-
quires the State to establish, beyond a reasonable
doubt, every material fact averred in the indictment;" and
further said that the rule was "not intended to shield those
who are actually guilty from just and merited punishment,
but is a humane provision of the law which is intended
for the protection of the innocent, and to guard, so far as
human agencies can, against the conviction of those un-
justly accused of crime." Appellant's counsel criticise this
charge, on the ground that it is misleading, and that it gave
the jury to understand that it is only in a case in which
a person has been unjustly accused of a crime that the rule
can be invoked. It is asserted that the jurors must have
understood from the instruction that they must determine
whether the defendant was unjustly accused of the crime in
question before the presumption of his innocence can have
any consideration. Or, in other words, it is claimed they
had the right to believe that it is only in a criminal cause,
wherein it appears that the party charged with the offense
is not actually guilty of its commission, or is unjustly ac-
cused, that the presumption of innocence is applicable. The
instruction is not open to this criticism. While it cannot
be said to be a model, still, when read in connection with the
other charges given in the case relative to the rule of rea-
sonable doubt, it cannot be said to be erroneous. In fact,
it is substantially the same as the one in *Turner* v. *State*
(1885), 102 Ind. 425, and in *Hauk* v. *State* (1897), 148 Ind.
238, each of which was sustained.

As before said, the evidence in this case, with some ex-

ceptions, is substantially the same as that given in *Sanderson* v. *State, supra.* There is, however, some evidence in the latter case which does not appear in the record before us, still there is much additional evidence in the case at bar tending to show the guilt of appellant which does not appear in the former case. The same assaults, however, made by the parties upon the deceased, and the other acts in obtaining forcible possession of his hay, horses, cattle and other property, appear in the evidence in this case in like manner as they do in *Sanderson* v. *State, supra.* The facts in the case at bar disclose that appellant, for several months before the murder, entertained a very revengeful feeling or ill-will against the deceased, and that on several occasions he called him vile names and made threats that he would kill him. It is shown that on Friday preceding the murder, which, as the evidence shows, was committed on Sunday night, October 23, 1904, appellant, on being informed that the deceased, Edward P. Sanderson, intended to replevy the stock and property which had been taken from him by the parties in question, said if Preston, meaning the deceased, ever crossed his path he would kill him; that he had whipped him and had paid fines therefor to the amount of $60, and further said that he would then "just go back and do up the s— of a b——." On other occasions appellant stated that he had knocked the deceased down, and that he would kill him. A short time prior to the murder he, together with two of his codefendants, said that they would "lick" the deceased whenever they got a chance. On Saturday prior to the murder appellant went to the home of his sister, Ollie Sanderson, one of his codefendants, the wife of the deceased, who, however, was at that time living apart from her said husband. Her home was in the immediate vicinity of the home of the deceased. On Sunday, October 23, the date of the murder, appellant and others of his co-conspirators were together at the house of said Ollie Sanderson, and at times during the day were seen engaged in close

consultation with each other. Appellant and Ernest Sanderson appear to have remained at the home of Mrs. Sanderson until Monday morning following the murder. During the following week a thorough search was made by neighbors of the deceased and other persons in an effort to discover the body. On Monday, October 31, at the time the search was being pursued, but before the body of the deceased was discovered, appellant went to see Mr. Bollener. In the conversation which he had with the latter he said: "What about this Sanderson case?," and further said that he understood that if they had found Sanderson's body in the woods, "they would have hung us fellows." He also said: "Well, if they find Sanderson's body I would go up and acknowledge I had killed him, on account of my brothers and old mother." At the time he made these statements he appeared to be nervous and was pale. On the week preceding the murder appellant had secured a "lay-off" from the work in which he was engaged at a paper-mill in Hartford City. He did not resume work again at the mill until on Monday morning following the murder. When he went to work on that morning he complained of feeling bad. After he was arrested on the charge of murder and was confined in jail, he had a conversation with a party who testified at the trial, in which he said: "I allow to bear up in the case as long as I can, and, when I cannot stand it any longer, I allow to save the other two and clear the two boys and take it all upon myself." To a fellow prisoner in the jail with him, who had been convicted of a crime and sentenced to be imprisoned from two to fourteen years, he said: "You got off easy," and "if I would get off that easy, I would not care."

Mrs. Clara Ayers, a witness at the trial, testified that during the week subsequent to the murder she and her husband saw appellant in the vicinity of Croninger's pond, in which the body of the deceased was subsequently found. She stated that at the time she saw him, he looked pale,

and as she and her husband passed him he dismounted from the bicycle upon which he was riding and watched them until they were out of his sight. Another witness testified that on several days during the week preceding the discovery of the body he saw appellant make trips by himself on a bicycle to a point near Croninger's pond. It may be said that there is much other incriminating evidence in the case pointing to the guilt of the accused, but it is unnecessary to refer to it all in detail. It was the province of the jurors to weigh and judge the evidence in the case, and in the light of all the testimony we are of the opinion that they could not have done otherwise than return the verdict in controversy. While we may say generally that we find no reversible error in the admission of the evidence about which appellant complains, nevertheless there are some particular items excepted to by him to which we will especially refer. His counsel complain of the admission of certain acts and declarations of some of his co-conspirators before, as they claim, there was any *prima facie* showing of the conspiracy in controversy. It is true that under the well-established general rule the acts and declarations of a co-conspirator, in furtherance of the common design made in the absence of the co-conspirator against whom they are offered as evidence, are only admissible after a *prima facie* case of conspiracy has been shown by competent evidence. But it is not necessary that the conspiracy be proved by direct evidence; it may be inferred from circumstances proved in the case. *Sanderson* v. *State, supra,* and cases cited.

The general rule that the prosecution should present a *prima facie* case before the acts and declarations of a co-conspirator are admissible in evidence against another co-conspirator cannot be regarded under all circumstances as a "hard and fast rule," and cannot always be strictly enforced. Especially is this true where the proof of the conspiracy depends upon a great amount of circumstantial evi-

dence or a great number of isolated and independent facts, or in any case where the entire evidence given on the trial when taken together discloses that the conspiracy in controversy actually existed. In such cases, as the authorities affirm, it is considered immaterial whether the conspiracy is established before or after the introduction of the acts or declarations of a co-conspirator. As a general rule the order of proof of the conspiracy is a matter largely within the discretion of the trial judge. Frequently, for the sake of convenience, the acts or declarations of one co-conspirator are admitted in evidence before sufficient proof is made in respect to the conspiracy. Generally such procedure is permitted upon the condition that the prosecutor will undertake to furnish the proof required at a subsequent stage in the case. 3 Ency. Evidence, pp. 425, 426; 1 Roscoe, Crim. Ev. (8th Am. ed.), *429, *430; 1 Greenleaf, Evidence (16th ed. by Wigmore), §184a; Spies v. People (1887), 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. 320; State v. Winner (1876), 17 Kan. 298.

At the trial of appellant, Ollie Sanderson was introduced as a witness in his behalf. By her testimony, among other things, he sought to prove an alibi on the 6. night of the murder. On cross-examination of this witness by the State she was asked, for the purpose of laying a foundation for impeachment, if she had not, prior to the murder in question, in the presence of certain persons named, and at the times mentioned, made certain threats and expressions of ill-will against the deceased. She denied that she had made any of the threats or expressions mentioned. On rebuttal, for the purpose of discrediting her by showing her ill-will and hostility toward the deceased, the State called the witnesses in whose presence she had made the threats and expressions about which she had been interrogated upon cross-examination. These witnesses, over appellant's objections and exceptions, were by the court permitted to testify that on the

occasions in controversy this witness had threatened to kill the deceased, and stated that if she did not kill him, ''the boys would,'' and further stated that she wished the house in which he lived would ''blow up with him in it.'' The court, at the time this evidence was offered by the State, instructed the jury that it should consider it only upon the question of the impeachment of the witness. It is insisted by appellant's counsel that the evidence in question was in respect to matter purely collateral, and therefore the State was bound by the negative answer of the witness. They further argue that it not only contradicted the witness and tended to impeach her testimony in the minds of the jury, but it also tended to show and affect her disposition and character. The State insists that the evidence was competent for the purpose of revealing the ill feeling and hostility which the witness entertained towards the deceased, thereby tending to prove her animus and hostility against the State in the prosecution of appellant for the murder. The general rule is that when a witness has been cross-examined in regard to a collateral matter, the cross-examiner is bound by his answer, and will not be permitted to contradict him by other evidence. Had the deceased, however, while in life, prosecuted a civil action against appellant for the assault and battery hereinbefore mentioned, and had the witness in question in such action testified in favor of appellant, certainly then the plaintiff would have had the right to show her hostility or ill feeling toward him for the purpose of enabling the jury to determine the credibility or estimate they would accord to her testimony. Or, had she been a witness in the case at bar for the State, appellant, upon cross-examination, would certainly have had the right to inquire of her whether she had expressed feelings of ill-will or hostility towards him, and upon her denial she might have been contradicted by competent evidence. 1 Greenleaf, Evidence (16th ed. by Wigmore), §450.

In Gillett, Indirect and Collat. Ev., §91, p. 139, the author

says: "It is not, however, regarded as collateral to show prior ill feeling, interest or other matter calculated

7.  to show the animus of the witness, and substantive evidence can be introduced on this subject, as it goes to the root of the question as to whether the witness's testimony is true." Upon the same point see *Scott* v. *State* (1878), 64 Ind. 400; *Staser* v. *Hogan* (1889), 120 Ind. 207; *People* v. *Brooks* (1892), 131 N. Y. 321, 30 N. E. 189. The latter case was a prosecution for the crime of arson. One of the questions presented in that appeal was whether the hostility of a witness who had testified against the defendant could be shown by independent testimony, without first examining the witness in respect to her hostility and ill feeling. The court, in considering the question, said: "The hostility of a witness toward a party against whom he is called may be proved by any competent evidence. It may be shown by cross-examination of the witness, or witnesses may be called who can swear to facts showing it. There can be no reason for holding that the witness must first be examined as to his hostility, and that then, and not till then, witnesses may be called to contradict him, because it is not a case where the party against whom the witness is called is seeking to discredit him by contradicting him. He is simply seeking to discredit him by showing his hostility and malice; and, as that may be proved by any competent evidence, we see no reason for holding that he must first be examined as to his hostility. And such we think is the drift of the decisions in this state and elsewhere. *Hotchkiss* v. *Germania Fire Ins. Co.* [1875], 5 Hun 90; *Starr* v. *Cragin* [1881], 24 Hun 177; *People* v. *Moore* [1836], 15 Wend. *419; *People* v. *Thompson* [1869], 41 N. Y. 1; *Schultz* v. *Third Ave. R. Co.* [1882], 89 N. Y. 242; *Ware* v. *Ware* [1831], 8 Greenl. (Me.) 42, 53; *Tucker* v. *Welch* [1821], 17 Mass. 160, 9 Am. Dec. 137; *Day* v. *Stickney* [1867], 14 Allen 255; *Martin* v. *Barnes* [1858], 7 Wis. *239; *Robinson* v. *Hutchinson* [1859], 31 Vt. 443; *New Portland* v. *Kingfield* [1867], 55

Me. 172; *Hedge* v. *Clapp* [1853], 22 Conn. 262, 58 Am. Dec. 424; *Cook* v. *Brown* [1857], 34 N. H. 460.''

The State in the case at bar, by the evidence in question, was merely endeavoring to discredit the testimony of the witness, given by her in behalf of appellant, by show-

6. ing her malice or hostility towards the deceased. It is true the latter was not a party to the action, but his murder was the subject of the prosecution. It was not for the purpose of assailing her character or disposition, as counsel insist, for, as before stated, its consideration by the jury was expressly limited by the court solely to the question of her impeachment as a witness. Certainly the evidence, naturally and in reason,' would tend to show her animus or hostility as a witness against the State in this particular prosecution. The court did not err in admitting the evidence for the purpose stated. The rulings of the trial court in admitting certain other evidence are criticised by counsel, but the particular evidence called in question cannot be said to be important or influential, and were, it conceded that the admission thereof was erroneous, it could not in reason be asserted, in view of the other evidence in the case, that it in any manner operated to impair or prejudice the substantial rights of appellant.

The case, under the facts and instructions of the court, appears to have been fairly tried and determined

8. upon its merits, and, after a careful consideration of all the questions presented and argued by counsel, we are satisfied that no reversible error is disclosed.

The judgment is, therefore, affirmed.