STEFFLER *v.* STATE OF INDIANA;
BLACKWOOD *v.* STATE OF INDIANA;
CRISLER *v.* STATE OF INDIANA.

[No. 28,694. Filed April 2, 1952. Rehearing denied
May 13, 1952.]

558

*Waldo C. Ging,* of Greenfield; *Nelson Bohannan,* of Anderson; *Charles D. Rogers* and *William C. Erbecker,* both of Indianapolis; *Frederick F. McClellan, Jr.* and *Clarence E. Benadum,* both of Muncie, for appellants.

*J. Emmett McManamon*, Attorney General; *George W. Hand* and *John Ready O'Connor*, Deputy Attorneys General; and *Melville E. Watson*, Prosecutor, 18th Judicial Circuit, for appellee.

EMMERT, J.—Appellants were jointly charged by an affidavit in two counts with conspiracy to commit grand larceny and automobile banditry. The jury returned verdicts that each appellant was guilty on both counts as charged, upon which judgments were entered, from which this appeal is prosecuted. Appellants have specifically waived any error of the trial court in overruling their motion in arrest of judgment. The errors properly presented here for our consideration were the two causes in the motion for a new trial, which asserted the verdicts were not sustained by sufficient evidence and were contrary to law. At the close of the state's evidence in chief, the appellants rested without either appellant taking the witness stand, and without introduction of any other evidence in their behalf.

After conviction this court does not weigh the evidence but considers only the facts in the record most favorable to the state together with all reasonable inferences that may be drawn therefrom. *Badgley* v. *State* (1948), 226 Ind. 665, 82 N. E. 2d 841; *Keith* v. *State* (1901), 157 Ind. 376, 61 N. E. 716.

When the evidence is so considered, the jury had the right to find the facts as follows: After midnight and before 3:00 o'clock the early morning of Thanksgiving, November 24, 1949, the storeroom owned by the Fortville Furniture, Inc., of Fortville, which is located in the northwest corner of Hancock County, was broken and entered and furniture of the value of

at least $1,200 was stolen and loaded on the truck of Fortville Furniture, Inc., which was located in the garage back of the store building.

At about 3:30 o'clock that Thanksgiving morning, John Randall, who resided on a farm about five miles northwest of Pendleton on State Road No. 38, was awakened by the sound of a motor vehicle engine on his driveway, which extended from State Road No. 38 for about 1,000 feet north to his home, barn and out-buildings, where the driveway made a complete U turn. When Randall first looked out he saw the truck of Fortville Furniture, Inc., which was unlighted on his driveway, in the light of a four door 1949 Olds-mobile convertible which had its top up. The tail lights on the convertible were large, rectangular in shape, set wide apart and set in the rear fenders in a vertical position. The truck, followed by the car, continued down his driveway and turned left on road No. 38. Randall dressed and drove his own car in pursuit of the truck and convertible, which then turned north on a county road to a T intersection where both the vehicles turned to the east in Madison County. The truck was stopped momentarily and left on the side of this county road, where the convertible stopped momentarily and then proceeded east to State Road No. 132, and then turned to the left toward the town of Lapel. Randall continued in pursuit but lost sight of the convertible in Lapel. Randall then started to return down road No. 132, when he saw the convertible again under a street light at the edge of Lapel as it was proceeding southeast toward Pendleton. At Pendleton Randall followed the convertible on old State Road No. 9 and pursued the car as it fled on State Road No. 9 and 67 toward Anderson, but in the traffic Randall lost sight of the Oldsmobile.

Randall then returned to Pendleton where he awakened Officer Epperson of the Indiana State Police force. Epperson followed Randall back toward the place the Fortville Furniture truck was located, and as the cars turned left on the county road both Randall and Epperson saw the Fortville Furniture truck in the headlights of a vehicle behind it, which immediately pulled around the truck and proceeded to meet them. Randall signalled Epperson by blinking his lights, and after Randall had passed the Oldsmobile Epperson threw his police car crosswise in the road, turned on his red light and got out of his police car to make the arrest. The Oldsmobile stopped, and upon Epperson's command, the three appellants left the Oldsmobile with their hands up and submitted to arrest. One of the appellants stated they had been hunting rabbits with a spotlight. At the direction of Epperson, Randall searched the convertible in which was found six pairs of gloves, two flashlights, a wrecking bar, a loaded shotgun, a loaded .22 rifle, some small drills, a glass cutter and two shotgun shells. Each appellant was searched by Epperson and his belongings thereafter kept by the officers. The search of the trunk of the car later at the Police Barracks at Pendleton Post disclosed a dead rabbit in the trunk.

The truck had been moved about 1,500 feet east from the place it was first abandoned, its headlights were still off, but the motor was running. A jumper connection had been used to bypass the ignition switch. Later the same day another pair of gloves was found on the road near the place where the truck had been stopped. The appellants, the Oldsmobile convertible, which belonged to the wife of one appellant, and the truck were taken to the State Police Post at Pendleton. An attempt was made to find fingerprints, but only

illegible smudged fingerprints were found on some of the furniture. Later appellant Blackwood was removed to the Madison County jail at Anderson.

Walter Fort, the Chief of Police of Fortville, the same evening found a cigarette lighter on the ground in the garage where the furniture truck was located the night of the theft. This was initialed by three of the officers and put with other belongings that belonged to appellant Blackwood. Sheriff Brogden of Madison County, who had charge of Blackwood and his belongings, placed the lighter with the belongings and put them on the table and asked Blackwood if the items were all his. Blackwood said, "Yes." Several more times he identified all the belongings as his property, and several times while in jail awaiting trial asked for this lighter.

A yellow chenille rug had been stolen and was in the truck. Samples of lint were taken from some of the clothing worn by appellants, and the witness Duncan, a special agent for the Federal Bureau of Investigation of the Bureau's laboratory in Washington, made an examination of the lint and fibers from the rug and clothing, and gave it as his opinion that some of the samples were similar, although he could not positively state the specimens had all come from the same source.

There is no necessity for an exhaustive review of the authorities on evidence sufficient to sustain a conviction on a charge of conspiracy. Evidence that merely shows relationship or association between the parties or evidence which merely establishes a suspicion of guilt, will not sustain a conviction. *Coughlin* v. *State* (1950), 228 Ind. 393, 92 N. E. 2d 718. But as stated in this case, "In order to be a conspiracy there must be an intelligent and de-

liberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred." (P. 395.)

A conspiracy can seldom be established by direct evidence of the unlawful agreement. But as stated in *Brewster* v. *State* (1917), 186 Ind. 369, 372, 115 N. E. 54, " 'Conspiracies need not be established by direct evidence of the acts charged, but may and generally must be proved by a number of indefinite acts, conditions and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly. It may be inferred by the jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged

in a conspiracy to effect that object. If, therefore, one concurs in a conspiracy, no proof of an agreement to concur is necessary in order to make him guilty.' 5 R. C. L. 1088, §37, and authorities cited. See, also, *Eacock* v. *State* (1907), 169 Ind. 488, 502, 82 N. E. 1039; *Cook* v. *State* (1907), 169 Ind. 430, 433, 82 N. E. 1047; *McKee* v. *State* (1887), 111 Ind. 378, 383, 12 N. E. 510; *Archer* v. *State* (1886), 106 Ind. 426, 432, 7 N. E. 225."

The facts and circumstances in this record, and the reasonable inferences to be drawn therefrom warranted the jury in convicting each appellant on each count.

Appellants are in error in their contention that there must have been proof that the conspiracy was entered into in Hancock County. From the evidence in the record the jury had the right to find that all appellants committed the grand larceny and automobile banditry as charged, and that their minds met understandingly so as to bring about an intelligent and deliberate agreement to commit said offenses although the agreement was not evidenced by any formal words. There was concurrence of sentiment and conduct in the unlawful and criminal enterprise. The fact that the state did not show where the conspiracy was first formed would not constitute a variance or deprive the Hancock Circuit Court of jurisdiction to try the cause. The larceny occurred in Hancock County. " 'At common law the venue in conspiracy could be laid in any county in which it could be proven that an overt act was done by any one of the conspirators in furtherance of their common design. 1 Archbold's Criminal Practice and Pleading (8th ed.) p. 226.' " *Hyde* v. *United States* (1912), 225 U. S. 347, 365, 32

S. Ct. 793, 56 L. Ed. 1114.[1]   The law on the place where a conspiracy is deemed to have been committed has been well summarized by the Supreme Court of Illinois in *People* v. *Blumenberg* (1915), 271 Ill. 180, 185, 110 N. E. 788, as follows: "Although, as has been stated, the unlawful combination alone constitutes the offense of conspiracy and no act in furtherance of the unlawful design is necessary to complete the offense, yet every such act is regarded, in law, as a renewal or continuance of the unlawful agreement. (*People* v. *Mather,* 4 Wend. 229; *Bloomer* v. *State,* 48 Md. 521; *McKee* v. *State,* 111 Ind. 378; *Rex* v. *Brisac,* 4 East. 164.)   A conspiracy once formed is presumed to exist whenever and wherever one of the conspirators does some act in furtherance of its purpose. We have held that the performance of an overt act continues the existence of a conspiracy so as to prevent the

---

[1] "When the conspiracy is a continuing one each overt act committed by any one of the conspirators gives effect to the conspiracy and constitutes an offence at the time of the commission of the act." 2 Bishop, Criminal Law (9th Ed.) §238zb, p. 187.

"Although technically the place where the conspiracy is entered into is the place of venue, yet it is generally held that the venue may be laid, as to any or all of the conspirators, in the county in which an act was done by any of them in furtherance of their common design; and consequently in this county all the co-conspirators are indictable.

"If a conspiracy be once established, although it was concocted out of the jurisdiction of the court, an overt act committed by one of the conspirators within the jurisdiction of the court, in the pursuit of the common object of said conspiracy, is the act of each conspirator. In such case we are to view the overt act, wherever committed, as a renewal of the original conspiracy by all the conspirators." 2 Wharton's Criminal Law (12th Ed.), §1666, pp. 1936, 1937.

"After the joint design was once fairly established, every act done in pursuance of the original purpose, whether by one or more of the conspirators, or by their agent, was a renewal of the original conspiracy." *McKee* v. *The State* (1887), 111 Ind. 378, 382, 383, 12 N. E. 510.

running of the Statute of Limitations. (*Ochs* v. *People, supra; Cooke* v. *People,* 231 Ill. 9.) Since each overt act is a renewal of the conspiracy, the offense is continuous so long as overt acts in furtherance of its purpose are done. The conspiracy is renewed as to all the conspirators at the place where the overt act is done, and it is not necessary to allege the exact place where the conspiracy was originally formed. (*Hyde* v. *United States,* 225 U. S. 347; *Brown* v. *Elliott,* id. 392.) It does not constitute a variance that the conspiracy is shown to be originally formed in New York if the evidence showed its renewal in Chicago and Will county by acts done to effect its purpose."

The evidence was sufficient to sustain the verdicts and they are not contrary to law.

It is noted from the court's intrinsic record here that count two of the affidavit, which charged conspiracy to commit automobile banditry, charged the conspiracy to commit the same grand larceny that was charged in count one. The verdict finding the appellants guilty as charged in the first count of the affidavit assessed their fines in the sum of $2,500. The verdict finding the appellants guilty of the second count also assessed their fines in the sum of $2,500. The trial court entered judgment against each appellant separately and fined each the sum of $2,500 on each count as well as sentencing each to a term of imprisonment for not less than two years nor more than fourteen years on each count.

We have previously called attention to the fact that §§5 and 6 of Ch. 54 of the 1929 Acts, §§9-2215 and 9-2216, Burns' 1933, were repealed by Ch. 85 of the Acts of 1935, §§9-2215 and 9-2216, Burns' 1942 Replacement. *Abraham* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358.

Automobile banditry, as defined by §10-4710, Burns' 1942 Replacement (Acts 1929, ch. 54, §3, p. 136), requires the commission of two acts to constitute the felony: (1) the commission or attempted commission of a felony, and (2) "having at the time on or near the premises where such felony is attempted or committed, an automobile, motorcycle, airplane, or other self-moving conveyance, by the use of which he or they escape, attempt to escape or intend to escape," or after having committed or attempted to commit such felony, the seizing of "an automobile, motorcycle, airplane, or other self-moving conveyance, by the use of which he or they escape or attempt to escape . . . ." See *Todd* v. *State* (1951), 230 Ind. 85, 101 N. E. 2d 922.

Before either of the appellants could be convicted of conspiracy to commit automobile banditry the jury had to find they conspired to commit the larceny charged, which in this case was the same larceny charged in count one. In *Kokenes* v. *State* (1938), 213 Ind. 476, 479, 13 N. E. 2d 524, which we followed in *Carter* v. *State* (1951), 229 Ind. 205, 96 N. E. 2d 273, this court declared the general rules concerning convictions on included offenses as follows:

> "In *Jackson* v. *State* (1860), 14 Ind. 327, 328, it is said: 'The state cannot split up one crime and prosecute it in parts. A prosecution for any part of a single crime, bars any further prosecution based upon the whole or a part of the same crime.' In *State* v. *Elder* (1879), 65 Ind. 282, 285, the following rules are laid down by Biddle, J., who wrote the opinion:
>
> " . . .
> " '2. When the facts constitute two or more offences, wherein the lesser offence is necessarily involved in the greater—as an assault is involved in an assault and battery, as an assault and bat-

tery is involved in an assault and battery with intent to commit a felony, and as a larceny is involved in a robbery—and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second.' "

The intrinsic record here does not present a case where an accused was charged with the commission of a felony and the conspiracy to commit the same felony which are separate acts not within the scope of the doctrine of included offenses. Here the charge was a conspiracy to commit larceny and under the second count, a conspiracy to commit the same larceny and escape by automobile. The conspiracy under the first count was necessarily included in the conspiracy under the second count. It was prejudicial error to enter a judgment on the first count even though the sentences run concurrently. *Carter* v. *State* (1951), 229 Ind. 205, 96 N. E. 2d 273, *supra.*

The judgments on the first count of the affidavit are reversed, and the judgments on the second count are affirmed.

Draper, J., concurs in result.

NOTE.—Reported in 104 N. E. 2d 729.