## ROBERTS *v.* STATE OF INDIANA.

[No. 23,512. Filed November 5, 1919. Rehearing January 7, 1920.]

1. CRIMINAL LAW.—*Continuance.*—*Absence of Counsel.*—Where the defendant's motion for a continuance, filed on the day of trial, rested solely on his own affidavit, which stated as a ground that the attorney depended on to make an active defense for him declined to appear because of his wife's illness, and that the defendant had no knowledge thereof until the day before the trial, the court on appeal will not disturb the overruling of the motion as an abuse of discretion, where there is a showing of record that at least ten days prior to the day set for the trial the defendant was represented by other counsel, and that throughout the trial he was ably represented. p. 715, 716.

2. CRIMINAL LAW.—*Continuance.*—*Discretion of Court.*—A motion for a continuance, filed on the day of trial, on the ground that one of the defendant's attorneys declined to appear because of the illness of his wife, calls into action the sound discretion of the trial court, there being no statute making the absence of counsel a ground for continuance, except where the attorney for the party applying is a member of the general assembly. p. 716.

3. CRIMINAL LAW.—*Continuance.*—*Absence of Witness.*—Where a defendant seeking a continuance because of the absence of a witness brings himself within the requirements of the statute, he can demand a continuance as a matter of right, unless the prosecuting attorney will admit the truth of the facts which the defendant alleges that he can prove by the absent witness. p. 716.

4. CRIMINAL LAW.—*Continuance.—Judicial Knowledge.—Matters of Record.*—Where a motion for continuance calls into action the discretion of the trial court, the court will take judicial knowledge of the pending proceedings, the facts disclosed by the record and all the circumstances obviously open to it as a basis for exercising its discretion.  p. 716.

5. CRIMINAL LAW.—*Appeal.—Discretion of Court.—Presumption.*—A motion for continuance, because the defendant's counsel declined to appear on account of his wife's illness, called for the judicial discretion of the trial court, and the court on appeal will assume that a ruling denying the motion was made in the belief that no injustice would result to the defendant thereby; the ruling of the trial court under such circumstances will not be disturbed on appeal, unless it clearly appears that there was an abuse of discretion to the harm of the defendant. p. 717.

6. CRIMINAL LAW.—*Conspiracy.—Evidence.—Declarations of Coconspirators.*—In a prosecution for conspiracy to commit a felony, under §§2647, 2260 Burns 1914, Acts 1905 p. 584, §§641, 371, there was no error in admitting evidence of declarations of the defendant's coconspirators, made in the absence of the defendant eight months before the commission of the alleged felony, in view of evidence warranting the inference that the defendant, though not one of the original conspirators, joined the conspiracy.  p. 718.

7. CONSPIRACY.—*Acts of Coconspirators.—Joining Existing Conspiracy.*—One who connects himself with an existing conspiracy and joins in carrying out the common purpose and design will be deemed in law a party to every act which had before been done by the others and which may afterwards be done by any of the others in furtherance of the design.  p. 718.

8. CONSPIRACY.—*Proof.—Existence and Nature.*—The existence or nature of a conspiracy cannot be established by the acts or declarations of one conspirator in the absence of the others, unless the acts or declarations were in themselves in execution, or for the promotion, of the common design.  p. 721.

9. CONSPIRACY. — *Existence of. — Joining Conspiracy. — Jury Questions.*—Whether certain defendants entered into a common purpose or design to commit, or to procure to be committed, the crime charged, and whether another connected himself with such common purpose, were questions of fact for the jury. p. 721.

From Randolph Circuit Court; *W. H. Eichhorn*, Special Judge.

Prosecution by the State of Indiana against Elisha Roberts. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Macy, Nichols & Bales,* for appellant.

*Ele Stansbury,* Attorney-General, *Newman T. Miller* and *Dale F. Stansbury,* for the state.

MYERS, J.—Appellant on an affidavit filed in the Randolph Circuit Court was tried and convicted of a felonious conspiracy to commit a felony. §§2647, 2260 Burns 1914, Acts 1905 p. 584, §§641, 371. From a judgment against appellant, assessing a fine of twenty-five dollars and imprisonment in the state prison for a period of not less than two years nor more than fourteen years, he prosecutes this appeal. The affidavit which includes three other persons as conspirators is not questioned. The overruling of appellant's motion for a new trial is the only error properly assigned and relied on for a reversal of the judgment.

Appellant, to support his motion for a new trial, insists: First, that the court erred in overruling his motion for a continuance. This motion rests solely

1. on his own affidavit, filed on the morning of the day the cause was set for trial, March 26, 1918, wherein he states in substance that some weeks prior to this time he employed one George H. Ward, an attorney of the Randolph county bar, as his local counsel, and on whom he depended to make an active defense for him; that since the employment aforesaid, Ward's wife has become seriously ill and is now in a hospital in the city of Indianapolis, where she will likely remain for an indefinite time; that by reason of such illness, Ward declines to enter upon the trial at this time because of emergencies that may arise relative to the condition of his wife, and of this information he had no knowledge until March 25; that he had no means of ascertaining

Ward's decision not to enter upon the trial because of the fact that Ward had not been in Randolph county during the week of March 18; that affiant has not engaged or employed any other counsel within the jurisdiction of Randolph county, and at this late hour he cannot safely engage the services of other counsel, as he verily believes, who could and would be able to familiarize themselves with matters necessarily required to protect his interest.

We know of no statute which makes the absence of counsel a ground for postponing the trial of a cause, except where the attorney for the party applying is 2. a member of the general assembly of the State of Indiana. §420 Burns 1914, Acts 1893 p. 16. An application such as we have here calls into action 3. the sound discretion of the trial court, and is distinguishable from one where a party is seeking a continuance on account of the absence of evidence. In a case of the latter character, where a party brings himself within the requirements of the statute, he can demand a continuance as a matter of right, unless the prosecuting attorney will admit the truth of the facts which the defendant alleges that he can prove by the absent witness. §2089 Burns 1914, Acts 1905 p. 584, §218. *Weaver* v. *State* (1899), 154 Ind. 1, 3, 55 N. E. 858; *Pettit* v. *State* (1893), 135 Ind. 393, 34 N. E. 1118; *Morris* v. *State* (1886), 104 Ind. 457, 4 N. E. 148; *Torphy* v. *State* (1919), *ante* 30, 121 N. E. 659, 660; *Moulder* v. *Kempff* (1888), 115 Ind. 459, 17 N. E. 906.

The trial court in matters of this character will take judicial knowledge of the pending proceedings and the facts disclosed by its records, and all facts and 4. circumstances obviously open to it as a basis for exercising its discretion. *Detro* v. *State* (1853), 4 Ind. 200. In this case the record shows that 1. at least ten days prior to the day this cause was

set for trial appellant was actively represented by counsel other than Ward pertaining to the taking of depositions, and six days before this same attorney examined the witnesses whose depositions were taken in appellant's behalf, and in court made and presented the motion supported by the affidavit heretofore mentioned, for the continuance of the trial. It does not appear that counsel, who was then and had been representing appellant for some time prior thereto, made any statement in any form to the court that he or they were not familiar with the facts and the law pertaining to appellant's defense, or that by reason of the time of their employment no opportunity was afforded them to properly prepare and present his defense. But from the record before us it clearly appears that appellant throughout the trial was well and ably represented by counsel.

As we have said, the motion in question called for the judicial discretion of the trial court, and we must assume that its ruling in this respect was made in 5. the belief that no injustice to appellant would be done thereby. A ruling under such circumstances will not be disturbed by this court, unless it clearly appears that the lower court abused its discretion to the injustice and harm of the complaining party. We are not convinced that the affidavit filed in support of the motion made a case which left the court no legal option to refuse to grant a postponement of the trial. *Wheeler* v. *State* (1902), 158 Ind. 687, 697, 63 N. E. 975; *Mead* v. *Burk* (1900), 156 Ind. 577, 583, 60 N. E. 338; *Evansville, etc., R. Co.* v. *Hawkins* (1887), 111 Ind. 549, 13 N. E. 63; *Louisville, etc., Traction Co.* v. *Montgomery* (1917), 186 Ind. 384, 115 N. E. 673.

Appellant next insists that the court erred in admitting declarations of his codefendants, Pierson and Drake, made in his absence about eight months before the alleged arson was committed.

The fire occurred July 10, 1916, and a witness called by the state was permitted to testify, over the objection of appellant, that during a conversation between

6. him and Pierson and Drake at their store in November, 1915, Pierson, in the presence of Drake, offered the witness $100 to burn their store, and

7. Drake offered to give him an additional $50. At the close of the state's evidence appellant moved to strike out the statements of Pierson and Drake on the ground that he was not present at the time they were made; that they were immaterial, and because a *prima facie* case of conspiracy had not been shown. As we see this case, appellant was not one of the original conspirators. If under the evidence before us he was at all guilty, it was by joining a conspiracy already formed to do the unlawful act charged. By considering only the evidence most favorable to the state, an inference of such fact might be drawn, and, if so, we must assume that the jury so found. With that fact established, the rule is that one who connects himself with an existing conspiracy and joins in carrying out the common purpose and design will be deemed in law "a party to every act which had before been done by others and a party to every act which may afterwards be done by any of the others in furtherance of such design." 1 Greenleaf, Evidence (15th ed.) §111; *Card* v. *State* (1887), 109 Ind. 415, 9 N. E. 591; *Walton* v. *State* (1882), 88 Ind. 9; *Jones* v. *State* (1878), 64 Ind. 473.

A conspiracy can seldom be made out by direct evidence, consequently, the necessity for the rule permitting it to be established by circumstantial evidence or by isolated and independent facts. *Cook* v. *State* (1907), 169 Ind. 430, 82 N. E. 1047. It appears that in September, 1915, Pierson and Drake purchased the stock of goods situated in a ground-floor room of a

building in Ridgeville, Indiana, and where they as owners thereof were operating the store at the time of the fire. The building belonged to another person who occupied an adjoining room with a stock of merchandise. The two rooms were separated by a brick partition wall, except two arch openings, which were closed by wood material. About two months before the fire Pierson questioned the clerk in the adjoining store as to whether the partition wall was brick, and how far up it extended. About two weeks before the fire he asked the owner of the building regarding the material of the partition, and also as to the amount of insurance he was carrying on the building, estimated to be worth $6,000, and was told $2,000 on the building and stock. Pierson then remarked, "You are not carrying enough." At the time of the fire Pierson and Drake had $12,000 insurance on their stock, but there is no evidence tending to show that it was over insured. Pierson and this appellant resided in Van Buren, Indiana. Drake had a room over the store where he did light housekeeping. His family was there part of the time. All of these parties had been intimately acquainted with each other for at least two years. There is no evidence as to the whereabouts of either Pierson or Drake on the night of the fire. Appellant and Pierson were well acquainted, and thirty days or less before the fire appellant was seen at the home of Pierson. It appears that Pierson to some extent was engaged in trading or buying and selling stocks of goods, and appellant assisted him in some of these deals. At the time of the fire appellant owned a small one-seated automobile, color, gray, and right-hand drive. There is evidence tending to show that this car was in Ridgeville about eleven or twelve o'clock on Sunday night before the fire, which occurred about one o'clock the next morning. Only one person was seen in the car. The undisputed evidence is to the effect that the

car was out of repair. The car was first seen on Main street going slowly east, and in about ten minutes it was going west. In a short time a man came from the direction in which the car was last seen going, and inquired where he could find a garage. This man, in the opinion of the witness, was Calvin Lincoln, who was also identified as being at a restaurant the same night. He is included in the affidavit with Roberts, Pierson and Drake. Lincoln and appellant, on July 7 and July 11, worked together on the farm of appellant's father, and knew each other prior to that time, but there is no direct evidence showing them together between these dates. The deputy marshal of Ridgeville immediately before discovering the fire saw a man come out of the Pierson and Drake store, who he says was neither Pierson nor Drake, and on calling to him he ran south about ten feet and then west down an alley. He was from seventy-five to eighty-five feet from the man who as he came out faced a 100-watt street light. The witness testified that in his opinion the person who came out of the store that night was this appellant. It also appears that Main street runs east and west and is the second street south of the Pierson and Drake store. The first street west of the store is known as Race street, and west of Race street the Pennsylvania Railroad tracks intersect Main street. The testimony of three witnesses tends to show that at about the time the fire alarm was sounded a medium-sized man, in appearance resembling appellant, was seen on Main street, running west across the railroad and in the direction of the automobile. Another witness testified that about twelve o'clock he went out Main street, and just outside of the corporate limits of the town he passed a small automobile, standing by the side of the road without lights. A little later he came back, and the lights were lighted, and a man was standing in front of them. As he approached the

railroad he saw a medium sized man on Main street running toward him and from the direction of the Pierson store. When this man reached the railroad, he dodged behind the watchman's shanty. Soon after the witness crossed the railroad he heard the fire alarm, and the store was burning.

As to the particular declarations of which the appellant complains, it may be said that: "The existence or nature of a conspiracy cannot be established by the acts or declarations of one conspirator in the absence of the others, unless the acts or declarations were in themselves in execution, or for the promotion, of the common design." *Moore* v. *Shields* (1889), 121 Ind. 267, 23 N. E. 89. The declarations in question were admissible as tending to show the mental state of Pierson and Drake at the time, and their purpose of promoting their common design through one whom they might procure to do the act. These declarations, when made, could have no bearing or probative force against appellant, unless, as we have seen, he connected himself in the promotion or consummation of the evil purpose charged, and we may assume, in the absence of the instructions given, that the court so instructed the jury. As said in the case of *Walton* v. *State, supra,* 17: "Standing alone, of course these declarations amounted to but little, if anything; but, when coupled with other facts and circumstances in evidence, their tendency was to show that the alleged conspiracy was even then afoot."

The question whether or not Pierson and Drake had entered into a common purpose or design to commit, or to procure to be committed, the crime charged, and whether or not appellant connected himself with that common purpose, were questions of fact for the jury alone. For the purpose of determining

these questions, the jury had a right to infer the actual fact of conspiring from all of the circumstances satisfactorily proved without any direct proof of concurring conduct of the defendants. "Any joint action on a material point, or collocation of independent but co-operative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment." 2 Wharton, Crim. Law (9th ed.) §1398; *Archer* v. *State* (1886), 106 Ind. 426, 432, 7 N. E. 225.

The court did not commit reversible error in admitting the questioned evidence.

Judgment affirmed.

NOTE.—Reported in 124 N. E. 750. Conspiracy: definition and general principles, 51 Am. Dec. 82; evidence of, 3 Am. St. 482. See under (7-9) 12 C. J. 577, 638, 642.