MOORE, TRUSTEE IN BANKRUPTCY OF NORTHERN INDIANA
OIL CO., INC. *v.* FLETCHER, ETC., ADMRS. ET AL.

[No. 19,594. Filed February 24, 1964. Rehearing denied
March 25, 1964. Transfer denied December 3, 1964.]

*George Cohan* and *Sheldon Cohan*, of Gary, *Owen W. Crumpacker, George V. Burbach,* and *Theodore M. Gemberling*, of Hammond, and *James K. Northam*, of Indianapolis, for appellant.

*Gavit* and *Eichhorn*, and *Frederick F. Eichhorn, Jr.*, of Gary, for appellee, Robert B. Fletcher.

*Tinkham, Beckman & Kelly,* of Hammond and *Hodges, Ridgely, Davis & Gruenberg,* of Gary, for appellees, Mary Jane Belles and Jack T. Snyder, Co-Administrators of the Estate of J. Ralph Snyder; Jack T. Snyder, and Margaret Snyder.

*Galvin, Galvin & Leeney,* of Hammond, for appellee, Ohio Oil Company.

HUNTER, P. J.—This action was commenced in the Lake Circuit Court by the trustee in bankruptcy of the Northern Indiana Oil Company, Inc. (appellant herein) alleging a conspiracy to defraud entered into by the appellees herein, and seeking to recover possession of real estate leased by the appellant, and the profits of said business during the period of the appellees' illegal possession; and the going business of the corporation. The cause was venued to the Jasper Circuit Court on the motion of defendant appellee Ohio Oil Company, and the issues presented here were raised by the filing of demurrers to appellant's amended complaint and second amended second paragraph of complaint on behalf of the several defendant appellees, and the court's rulings sustaining said demurrers. The court after sustaining the several demurrers, subsequently sustained the motion filed by the several appellees for an order denying the filing of plaintiff's purported second amended complaint, third amended second paragraph of complaint, and motion for change of venue from the county, and then denied the motion for change of venue from the county tendered by the plaintiff appellant. The appellant alleges, as a basis for a reversal of the trial court's determination, that the several demurrers were improperly sustained, and further that the trial court erred in granting the defendant appellees' motion for an order

denying the filing of appellant's motion for a change of venue from the county. Since the commencement of the original action and during the pendency of this appeal, Robert H. Moore, the trustee in bankruptcy (plaintiff herein), has died and by order of this court on July 24, 1963, Stanley A. Tweedle was substituted as the trustee in bankruptcy of the Northern Indiana Oil Company, Inc.

In order to better understand the issues presented by this appeal, the various filings and actions taken under such filings are set forth in chronological order as follows:

(1) On May 24, 1960, the several demurrers of the defendant appellees to the appellant's amended complaint and amended second paragraph of complaint were sustained by the Jasper Circuit Court.

(2) The appellant's attorney by letter directed to the judge of the Jasper Circuit Court stated his intention to plead over by June 6, 1960.

(3) No order book entry was ever made by the Jasper Circuit Court ruling the plaintiff appellants to plead by a date certain.

(4) On June 27, 1960, in vacation term the appellant tendered for filing to the judge of the Jasper Circuit Court, then and there present in the office of the clerk of said court, the following pleadings: (a) second amended complaint and third amended second paragraph of complaint, and (b) a motion for change of venue from the county, which the judge then entered upon the docket sheet of the cause.

(5) On September 12, 1960, the same being the first day of the September, 1960 term of said court the defendant appellees filed separate and identical motions in

said court for an order: (a) denying the filing of plaintiff's second amended complaint, plaintiff's third amended second paragraph of complaint, and (b) plaintiff's motion for change of venue from the county, and (c) motion for judgment, alleging in essence in support of their separate and several motions (1) that the plaintiff was in default for the reason that the plaintiff was granted time until June 6, 1960, to plead after the demurrers had been sustained and further that by reason of the fact that no pleadings had been filed by June 6, 1960, there was no cause of action pending upon which an issue of fact or law could be joined, and (2) that the court should refuse to file the motion and affidavit for the change of venue from the county for the reason that no action was then pending between the parties, and that the motion was filed after the time for filing had expired under Rule 1-12B of the Supreme Court of Indiana. Prayer of said motion was for an order (1) refusing to permit the filing of the amended pleadings tendered and the motion for change of venue from the county, and (2) praying for an entry of judgment for the defendant, Ohio Oil Company. On October 8, 1960, the Jasper Circuit Court sustained the motion of each of the defendants and denied the motion for change of venue from the county and the court entered judgment against the plaintiff.

On November 3, 1960, the plaintiff filed a motion to vacate the judgment entered by the court on October 8, which motion was overruled.

The appellant in his assignment of error alleges (1) the court erred in sustaining the demurrers of the several defendant appellees to the plaintiff appellant's amended complaint and amended second paragraph of complaint, (2) the court erred in sustaining the motion

of the defendants for judgment, and (3) the court erred in denying the plaintiff's motion for change of venue from the county.

It will be readily seen from the above resume of the facts that two questions are presented: (1) did the court err in sustaining the several demurrers to the plaintiff's amended complaint and second paragraph of complaint, and (2) did the court err in denying the change of venue from the county?

The several appellees stated in demurrers to the amended complaint that the plaintiff appellant lacked the legal capacity to sue on behalf of Northern Indiana Oil Co., however, the appellant refers the court to the Federal Bankruptcy Act, 11 U.S.C.A. §29 (e) which provides as follows:

"(e) A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State Law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy."

This court is of the opinion that the above quoted statute is sufficient authorization to allow the appellant in this action to initiate the cause of action. This court is further of the opinion that the jurisdiction of the state court system is conferred by the Federal Bankruptcy Act, 11 U.S.C.A., §107 (e), which states:

"(e) For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

An action in equity for damages and recovery of property based upon a conspiracy to defraud would be triable in the state courts in the normal situation, and the above quoted statute retains the necessary state court jurisdiction. The several appellees in this action are each subject to the jurisdiction of the state courts, inasmuch as the individuals are residents of the county in which the action was originally instituted, and the defendant appellee Ohio Oil Company has consistently carried on business within the county, thereby subjecting itself to the jurisdiction of the Lake Circuit Court for purposes of adjudicating controversies arising out of this business.

The demurrers to the amended complaint and second amended second paragraph filed by the several defendant appellees also alleged that the plaintiff appellant did not state sufficient facts to constitute a cause of action. The capacity of appellant Moore to initiate the action discussed herein has been conclusively shown by reference to the Bankruptcy Act, 11 U.S.C.A. §29 (e), *supra*. Therefore, the primary issue before this court is whether or not the demurrers were properly sustained because of the insufficiency of facts alleged in the amended complaint.

The amended complaint and the second amended second paragraph of complaint, after striking the captions, are set forth in their entirety as follows:

"For his amended complaint, plaintiff complains of defendants and each of them and says:—

1. Plaintiff is the duly appointed, qualified and acting trustee in bankruptcy of Northern Indiana Oil Company, Inc., under appointment of the United States District Court for the Northern District of Indiana, Hammond Division. He brings this action by direction of said court, on behalf of and in the right of said bankrupt and its creditors. The prop-

erty which is the subject matter of this action is located in Lake County, Indiana, and each of the individual defendants reside in said county. Ohio Oil Company is a corporation foreign to the State of Indiana but duly qualified to do business, there in.

2. Defendant Robert B. Fletcher now has in his possession and control property and money which rightfully belong to the estate of said bankrupt corporation and to the plaintiff as its trustee in bankruptcy, which he wrongfully withholds from the plaintiff. The nature of this property, and the manner and means by which Fletcher came into possession of it and has withheld it from the bankrupt and its estate down to the present time, are as follows:

3. The bankrupt, Northern Indiana Oil Company, Inc., which will afterwards be referred to in this complaint as "the corporation", is an Indiana corporation, organized in 1937 by one A. B. Harris and defendant J. Ralph Snyder. From its inception down to the present time, Snyder has held legal title to all its capital stock except qualifying shares for directors. Snyder owned half of its capital stock in his own right and he held legal title to the other half in trust for Harris as equitable owner. From the beginning Snyder was, and still is, director and president of the corporation. From the beginning until the early part of January, 1945, Harris was director and manager. From the time of its organization down to the end of 1944 the corporation, by the expenditure of its money and the labor of its officers (principally Harris), succeeded in building up a valuable going business which, by the end of 1944, had an actual fair market value of at least $50,000.00, which now is worth more than $100,000.00. This business then consisted, and now consists, of two related parts: (1) operating parking lots in Gary, and (2) being the distributor in that area of the gasoline, oil and fuel oil of Ohio Oil Company. The latter was and is a nation-wide manufacturer of petroleum products which it sells to distributors such as this corporation, who in turn re-sell its products at retail or at wholesale through filling stations (called in the trade "out-

lets") controlled by Ohio Oil Company or by the distributor. The acquisition, development and control of these "outlets" was and is of primary importance both to Ohio Oil Company and its distributors such as this corporation. To this end, Ohio Oil Company had actively collaborated with the corporation during that period in building up its parking lot and distributorship business, by means of Ohio Oil Company giving it money and aiding it in the acquisition of filling station sites, and Ohio Oil Company had become the corporations' lessor on several of its most important and valuable filling station sites, without which its business would be ruined. Accordingly, in January, 1945, and thereafter, a situation existed whereby the corporation, in conjunction with Ohio Oil Company, had, by large capital expenditures, acquired and built up its going business as a joint adventure for the common benefit of Ohio Oil Company and itself. The going value of its business was dependent in large measure upon the continued cooperation and good faith of Ohio Oil Company toward the corporation, both as supplier of its products and as lessor, because the corporation had devoted years of effort and large amounts of its money to promoting the sale of Ohio Oil Company's products under the latter's trade name "Marathon" in Gary and at these sites.

4. By reason of the aforesaid nature of its business, the corporation's assets consisted of: (a) *tangibles,* which were the least valuable part of its assets, comprising its physical equipment, trucks and a small inventory of petroleum products and accessories; (b) *intangibles,* which were the most valuable part of its business, consisting of its aforesaid distributorship for Ohio Oil Company's "Marathon" products, its underlying leaseholds on the sites of its bulk plant, filling stations and certain of its parking lots, and its going business value.

5. In the latter part of December, 1944, defendant J. Ralph Snyder and his friend, the defendant Robert B. Fletcher, formed, and thereafter continued to carry out down to the present time, a plan and conspiracy with the object that: Said going

business would be taken away from said corporation and placed in the hands of Fletcher. The corporation would be gotten rid of by being allowed to drift into bankruptcy. Thereby Snyder would get rid of the corporation which owned this business, and would get rid of Harris who was his co-owner of the corporation. Fletcher would take over and become the ostensible owner of the corporation's $50,000.00 going business for a small consideration, in the neighborhood of $5,000.00. Fletcher would thereafter hold and operate the business ostensibly for himself as sole owner but actually for the joint benefit of himself as part owner and J. Ralph Snyder or the latter's son (the defendant, Jack T. Snyder) as secret co-owner, thereby cheating and defrauding the corporation, its creditors, and also Harris, the equitable owner of half of its capital stock.

6. In furtherance of said plan and conspiracy, defendants J. Ralph Snyder and Robert B. Fletcher, entered into the following course of conduct and did the following acts, among others:

(a) In the latter part of December, 1944, Snyder approached his friend Fletcher, and the two of them orally agreed that Snyder would cause the corporation to turn over said business to Fletcher.

(b) In the first part of January, 1945 Snyder, by virtue of being able to vote the entire capital stock, voted Harris out of office as director, physically ousted him from his previously-held position as the corporation's manager, and assumed sole physical and actual control of the corporation's affairs.

(c) Under a purported "lease-option" dated January 26, but actually placed in operation on January 15, 1945, Snyder turned over the entire going business of the corporation to Fletcher as lessee for a term of one year with an option to renew for an additional year, and an option to purchase the leased property. The "lease-option," drafted by the law firm which represented both Snyder and Fletcher, under Snyder's direction, was drafted in such form that it purported to lease to Fletcher all its physical equipment and all the un-

derlying leaseholds where the corporation conducted its business, including its bulk plant, filling stations and parking lots, while making only indirect reference to the business. The actual intent and effect of that instrument was to turn over to Fletcher the corporation's going business as an entirety by the device of placing him in possession of its physical equipment and business sites, so that he would automatically come into possession of the intangible (and most valuable) part of its assets, consisting of its business and its going value thereof. By the terms of this lease, Fletcher agreed to pay the corporation as rental the nominal sum of $50.00 per month plus assuming and agreeing to pay on behalf of the corporation the rentals on all the underlying lease-holds on the sites of the corporation's business, including the sites of its bulk plant, filling station outlets and parking lots. This stripping the corporation of possession and use of its assets and giving it only a nominal rental income, precipitated its bankruptcy.

(d) Though the "lease-option" contained a requirement for Fletcher to deposit $5,000.00 with the corporation to guarantee his performance, Fletcher never did this but instead made the deposit with Snyder personally, and Snyder refunded it to him after the corporation's bankruptcy, pursuant to some secret part of their plan and conspiracy, for which they used the pretended "lease-option" as a cloak.

(e) When an involuntary petition in bankruptcy was filed in said United States District Court against the corporation on April 26, 1945, three months after the date of the above lease, said J. Ralph Snyder, as the corporation's president, filed schedules of its assets, sworn to by him, wherein he omitted to schedule the corporation's ownership of said business which he had caused the corporation to turn over to Fletcher three months earlier, or said lease to Fletcher, or any of the corporation's said underlying leaseholds upon its business sites.

(f) Thereafter, said J. Ralph Snyder and Fletcher, in person and by agents, in furtherance of said plan and conspiracy, continued to collabo-

rate and connive in the acts of Charles L. Surprise and Ohio Oil Company after these two started to aid the conspiracy as set forth in paragraphs 7 and 8, below.

7. Defendant Charles L. Surprise was appointed by said bankruptcy court as receiver of the corporation on April 28, 1945, it was adjudged bankrupt on May 14, 1945, and Surprise was appointed trustee in bankruptcy of the corporation on June 15, 1945. About the time of his appointment, the exact date being presently unknown to plaintiff, Surprise joined said plan and conspiracy and started to aid and collaborate with Fletcher and Snyder in carrying it out. In furtherance thereof he engaged in the following course of conduct and did the following acts, among others:

(a) Though he knew of the existence of unscheduled assets of the corporation, including the corporation's ownership of said business, said lease to Fletcher, and the corporation's said underlying leaseholds on its business sites, and knew of Snyder's failure to schedule them, as above set forth in paragraph 6(e), he refrained from informing said bankruptcy court thereof, and refrained from taking any action to repossess said assets from Fletcher or to have the same sold for the benefit of the estate.

(b) On the contrary, Surprise persistently carried forward a program of letting Fletcher keep said going business and appropriate it as his own. As part of the program, Surprise falsely pretended that since the estate lacked cash funds for him to "operate" the business, he had no alternative but to let Fletcher keep it as his own,—well knowing but ignoring the fact that he could and should take steps to inform the Court of the situation and take steps to sell the business as a going concern and thereby obtain the value thereof for the estate.

(c) Further in aid of said program of letting Fletcher keep and appropriate said business as his own, Surprise repeatedly evaded, obstructed and rejected attempts by Harris to provide him with prospective purchasers, in the oil business, who

were interested in purchasing the corporation's business.

(d) Further in aid of said program, Surprise knowingly and purposely acquiesced in Fletcher's conduct of obtaining renewals of the corporation's underlying leaseholds on its business sites as Fletcher's own, though he well knew that Fletcher was the corporation's tenant of said business sites. Again Surprise refrained from bringing this matter to his Court's attention.

(e) Further in aid of said program, Surprise made repeated attempts to aid Fletcher to obtain lawful ownership of the going business through the device of urging the Court to sell Fletcher the corporation's physical equipment at a small price not exceeding $4,000.00 or $5,000.00, which would have resulted in an order indirectly letting Fletcher keep the business through having purchased the physical equipment of the business at a price less than 10% of the value of the business.

(f) Fletcher remained the tenant of the corporation (and Sruprise (sic) as its trustee) until January 1, 1947, in possession of its same leased assets and business and paying the same rental of $100.00 per month to Surprise, while Surprise, Fletcher and Snyder exhausted their efforts to obtain a judicial sale by the bankruptcy court of the corporation's physical equipment to Fletcher and thereby vest Fletcher with color of lawful title to the corporation's underlying leaseholds and business. By the latter part of 1946 it became apparent to them that those efforts to obtain judicial sanction were doomed to failure because of the persistent objections thereto by Harris and his attorney George Cohan. Then, in order to accomplish the same by different means, Surprise collaborated with Fletcher in trying to create and give out the false impression that Fletcher had been paying the $100.00 per month only as rent on the corporation's second hand equipment, and that Fletcher was going to turn back to Surprise the equipment (then worn out and worthless) and sever relations with Surprise, while Fletcher quietly and unlawfully kept the corporation's underlying leaseholds and busi-

ness with Surprise's acquiescence and connivance, and while Surprise again refrained from bringing the truth of this situation to his Court.

(g) When Harris and his attorney, George Cohan, sought to bring Fletcher's aforesaid unlawful withholding and mis-appropriation of the corporation's assets to the attention of the bankruptcy court and sought to have the court compel Surprise to take action to repossess said business and underlying leaseholds from Fletcher, Surprise, by his pleadings and statements to the court, actively sought to obstruct said effort and persistently argued in favor of Fletcher's adversely asserted claim to said assets against the estate,—all in secret furtherance of said program and in aid of said conspiracy.

8. Defendant Ohio Oil Company actively and effectively collaborated with and aided said Fletcher, Surprise and Snyder in carrying out said plan and conspiracy for the unlawful purpose of enabling Fletcher to obtain and mis-appropriate said going business from the corporation and its estate, in the following situation, and by means of the following course of conduct and acts, among others:

(a) As already stated in paragraph 3, in January, 1945 and thereafter, Ohio Oil Company was in a position to strangle and destroy the corporation's going business, both because it was the supplier of the brand of petroleum products around which the corporation's business had been built and also because it was the corporation's lessor on its most important and essential filling station sites,—a situation which had grown up out of the aforesaid joint adventure of Ohio Oil Company and the corporation. These facts were well known to Ohio Oil Company. It also knew and was chargeable with knowing that the corporation had turned this going business and filling station sites over to Fletcher as its lessee, which had been done with its acquiescence and assent. It knew and was chargeable with knowing that Fletcher was wrongfully attempting to acquire an adverse ownership of said business and filling station leaseholds against his lessor, the corporation, notwithstanding his duty

not to acquire adverse interests against his lessor and his legal disability so to do. It also knew and was chargeable with knowing of the aforesaid plan and conspiracy between Snyder and Fletcher (later joined in by Surprise) to enable Fletcher to get this going business and the sites thereof away from the corporation and mis-appropriate them.

(b) In said situation and with said knowledge, Ohio Oil Company aided and abetted Fletcher in thus acquiring adverse ownership of this business and sites which the corporation had leased to him, and it aided and abetted the aforesaid plan and conspiracy, by each of the following means: (1) By making and continuing to maintain the corporation's wrongdoing lessee, Fletcher, its distributor in his own individual right. (2) By transferring to Fletcher, or renewing in Fletcher's name, the corporation's said leaseholds upon its said filling station sites. (3) While thus aiding Fletcher to wrongfully acquire said business and leaseholds adversely to the corporation and its estate, Ohio Oil Company also aided Fletcher, Snyder, and Surprise to prevent a sale of the corporation's going business to any purchaser, by the device of pretending to refuse to deal with Surprise as trustee.

9. Plaintiff further says on information and belief, that defendant J. Ralph Snyder caused his secret part ownership in said business and leaseholds, which are ostensibly owned by Fletcher, to be originally placed in or transferred to his son, the defendant Jack T. Snyder, and the latter's wife, Margaret Snyder, and that said Jack T. Snyder and Margaret Snyder (a) received and hold same for themselves as a gift from said J. Ralph Snyder without consideration, or (b) received and hold same in secret trust for him. They knew or were chargeable with knowing of the aforesaid rights therein of Northern Indiana Oil Company and of its Trustee in bankruptcy. Plaintiff further says, on information and belief, that said Jack T. Snyder and Margaret Snyder joined in the aforesaid conspiracy and aided and abetted it by means of thus receiving and concealing the part ownership in said leaseholds and business which came into their hands, either (a) for the benefit of themselves or

(b) for the benefit of said J. Ralph Snyder or (c) for the benefit of persons presently unknown to the plaintiff. Accordingly, said Jack T. Snyder and Margaret Snyder have been made defendants for the purpose of answering and being examined concerning any right, title or interest which they received or have or assert in any of said business, leaseholds or property ostensibly owned by Fletcher which is the subject of this action, and to be examined and answer as to all their transactions with any of their co-defendants concerning said business, leaseholds and property.

10. By reason of the foregoing facts, plaintiff asserts:

(a) The above described business in its entirety which Fletcher now holds and operates, (including all underlying leaseholds on all business sites, parking lots and gasoline and oil outlets, and its distributorship for Ohio Oil Company's products, together with all accruals thereof since he was put in possession on January 15, 1945), is now held by him as the wrongfully holding over tenant of the corporation and its estate.

(b) Further, Fletcher holds the above described business and property in its entirety as constructive trustee for the corporation and its estate.

(c) Fletcher, and any of the other defendants who have participated in the income or profits of said business, are accountable to the corporation and its estate for all the income and profits which have been derived from said business and property since the date Fletcher ceased paying rent therefor to the trustee, January 1, 1947.

(d) As an incident to the repossession from Fletcher and subsequent sale of said going business as an asset of the corporation's estate, defendant Ohio Oil Company is subject to the decree and orders of this Court in this cause for the purpose of complying with such orders as the Court may make for the purpose of transferring said distributorship and also any of said underlying leaseholds of which it is Fletcher's lessor, to the plaintiff or to a proper purchaser of said business to whom the bankruptcy court may order the business

sold. Defendant Ohio Oil Company, by reason of its aforesaid collaboration with and abetting of said conspirators whereby said business, including said distributorship and leaseholds, were wrongfully placed and retained in Fletcher's hands, is equitably under a duty to aid the corporation's estate and this Court in restoring to the estate said wrongfully withheld business and property, and is subject to the equity jurisdiction of this Court for all purposes in connection with such restoration and restitution.

(e) Defendants Fletcher and Snyder knowingly and fraudulently concealed from creditors in this bankruptcy proceeding the aforesaid property belonging to the estate of this bankrupt. Further, Snyder knowingly and fraudulently made false oath as the corporation's president to the schedules of its property in said bankruptcy proceeding, as above explained in paragraph 6 (e). Further, Snyder as officer of the corporation, and in contemplation of a bandruptcy (sic) proceeding by or against the corporation, knowingly and fraudulently transferred to and concealed in the the (sic) hands of Fletcher said business and property of the corporation, by the means aforesaid. Defendants Surprise and Ohio Oil Company collaborated in and aided and abetted said concealments and transfers by Surprise and Fletcher, by the means aforesaid.

(f) Within the terms of Section 70e of the Bankruptcy Act (11 U.S.C.A. 70e) said transfer of the corporation's business and property to Fletcher, which was made and suffered by the corporation at the direction of Snyder, was fraudulently against and voidable by creditors of the corporation having claims provable under the Bankruptcy Act, both by virtue of Federal and State law applicable thereto, to-wit: It was fraudulent and voidable under Section 67d(2) of the Bankruptcy Act (11 U.S.C.A. 107d(2) because it was made within one year prior to the filing of the petition in bankruptcy without fair consideration by a debtor corporation which was and would be thereby rendered insolvent; and also because it was made without fair consideration by a debtor corporation for whose business the property remaining in its

hands was an unreasonably small capital; and also because it was made with actual intent by the corporation's president, Snyder, to cheat, hinder, delay and defraud existing creditors of the corporation. It was also fraudulent and voidable under the Indiana Bulk Sales Law (Secs. 33-201 et seq. Burns' 1949 Replacement) because Fletcher and the corporation (through Snyder) totally failed to do the acts specified in and required by said law. Thereby, said transfer of the corporation's business and property which Snyder caused the corporation to make to Fletcher was and remains void as against the trustee of its estate, and all said business and property thus affected by the transfer, is and remains a part of the assets of the corporation's estate, discharged and released from said transfer, and it has passed to the trustee for the benefit of the estate. Thereby the trustee is under a duty to, and is entitled to, reclaim and recover. such property or collect its value against Fletcher and any other of the defendants who may hold or have received it,—all by virtue of said Sec. 70e of the Bankruptcy Act (11 U.S.C.A. 70e).

WHEREFORE, plaintiff prays:

1. A decree that this plaintiff, as the trustee of said corporation's bankrupt estate, is the owner of the above described property which is the subject of this action in all its aspects including said going business, underlying leaseholds and distributorship.

2. That this Court may take an account of all the income and profits of said entire business which have been derived by Fletcher or any of the other defendants therefrom since January 1, 1947, and decree that defendants pay over same to the plaintiff.

3. That the court make all necessary and proper orders against each of the defendants for the turning over of said going business, including its said leaseholds and distributorship, to the plaintiff.

4. That the court assume full equity jurisdiction over all the defendants and the entire business and property which is the subject matter of this action, for the purpose of granting to the plaintiff all

just and equitable relief in the premises; and he prays for his costs.

George Cohan

Jay E. Darlington

Attorneys for Plaintiff"

(Tr. p. 57, l. 5—p. 71, l. 6)

. . . . .

"For his second amended second paragraph of complaint, plaintiff complains of defendants and each of them and says:

1-9. The allegations of rhetorical paragraphs 1-9 inclusive of the foregoing First Paragraph of amended complaint are made a part hereof by reference.

10. By reason of the foregoing facts, and by reason of the aforesaid fraudulent acts and conspiracy of the individual defendants and defendant Ohio Oil Company, said Northern Indiana Oil Company and the plaintiff as its Trustee have been damaged by the resulting loss of the above described property, including said gasoline and oil distributing business and parking lot business in its entirety, together with all its underlying leaseholds and distributorship, together with the income, profits and accruals thereof. The individual defendants thus took advantage of their fiduciary relationships to cheat and defraud the cestui que trust, namely the corporation and the plaintiff as its Trustee, out of said property thus held by them in trust, in which wrong they were aided and abetted by the defendant Ohio Oil Company as aforesaid,—all to the actual damage of the corporation and the plaintiff Trustee in the sum of $150,000.00.

11. In addition to the aforesaid actual damages, plaintiff claims punitive damages against defendants and each of them by reason of the further facts that said wrong was committed by defendants and each of them with the fraudulent and collusive purpose of oppressing, cheating and defrauding the corporation and the plaintiff Trustee, and said wrong has imposed long and unjust hardship upon

the corporation and the plaintiff Trustee beyond the aforesaid actual damages. Thereby plaintiff claims punitive damages against defendants and each of them in the additional sum of $100,000.00.

WHEREFORE, plaintiff prays a money judgment at law against defendants and each of them in the sum of $250,000.00, costs, and all further just and proper relief.

> George Cohan
> Jay E. Darlington
> Attorneys for Plaintiff"

(Tr. p. 116, l. 20—p. 117, l. 27)

The appellant contends that the amended complaint and second amended second paragraph state facts sufficient to base a cause of action for conspiracy to defraud. The general rule in this jurisdiction is well stated in the case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 601, 100 N. E. 675, where our Supreme Court stated:

"In construing a complaint, where a demurrer is interposed, it will be deemed sufficient whenever the necessary allegations can be fairly gathered from all the averments, even though stated illogically and by way of argument. All facts will be deemed stated that can be implied from the allegations made, by fair and reasonable intendment, and facts so impliedly averred will be given the same force as if directly stated. (Cases cited.)"

The above cited general rule was modified as set forth in the case of *Rodebaugh* v. *Rodebaugh* (1923), 79 Ind. App. 324, 328, 138 N. E. 263, when this court stated:

"It is also contended that a complaint, seeking relief on the ground of fraud, must state the acts which constitute the same. While this is true as a general rule, it is also true that, under the provisions of the statute, a conclusion of fact, stated in a complaint, shall be considered and held to be

the allegation of all the facts required to sustain such conclusion, when the same is necessary to the sufficiency thereof, unless a motion is made to require the plaintiff to state the facts necessary to sustain the conclusion alleged. (Cases cited.)"

The law of the case hereinabove stated is codified in Burns' Annotated Statutes §2-1005 (Acts 1913, ch. 322, §1, p. 850; 1915, ch. 62, §1, p. 123.) The Supreme Court has further delineated the equitable considerations in a determination of a case of the type being discussed herein in the case of *Smith* v. *Borden* (1903), 160 Ind. 223, 228, 66 N. E. 681, wherein the court stated:

" . . . the rule is well settled that a court in construing a pleading is not required to construe it most strongly against the pleader, but, in order to promote substantial justice between the parties, a liberal construction will be given. In determining the sufficiency of a pleading, we must consider it in regard to its general scope and as an entirety. (Cases cited.)"

Two cases of more recent origin, *State ex rel. DeArmond* v. *Superior Court of Madison County et al.* (1940), 216 Ind. 641, 25 N. E. 2d 642, and *Cline* v. *Rodabaugh* (1931), 97 Ind. App. 258, 179 N. E. 6, have established criterion to determine the particularity which is required in a complaint. In the DeArmond case, *supra,* the Supreme Court held that:

"It is a fundamental rule of the law of pleading and practice that a party claiming relief shall present the issue to be tried in such a manner as to invoke the jurisdiction of the court and advise the adverse party as to the nature of the demand, so that he may have an opportunity to meet the proof that may be offered to establish it." p. 644.

Further, in the case of *Cline* v. *Rodabaugh, supra,* this court stated:

"A complaint is sufficient when it states the facts relied upon in such a manner that a person of common understanding will know what is intended. *No greater particularity is required than the nature of the facts intended to be pleaded admit.*" (our emphasis) *City of LaPorte* v. *Osborn* (1909), 43 Ind. App. 100, 86 N. E. 995; *City of Huntington* v. *Stuver* (1908), 41 Ind. App. 171, 83 N. E. 518.

The quotations from the DeArmond case, *supra,* and the Cline case, *supra,* assume much significance in the case presently before this court inasmuch as the appellant is involved in the difficult area of conspiracy. In the case of *Roberts* v. *State* (1919), 188 Ind. 713, 124 N. E. 750, the Supreme Court, in discussing the issue of conspiracy, stated:

"A conspiracy can seldom be made out by direct evidence, consequently, the necessity for the rule permitting it to be established by circumstantial evidence or by isolated and independent facts. *Cook* v. *State* (1907), 169 Ind. 430, 82 N. E. 1047."

. . . "Any joint action on a material point, or collocation of independent but co-operative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment . . . *Archer* v. *State* (1886), 106 Ind. 426, 432, 7 N. E. 225."

The scope of an allegation of fraud has been well-defined by the courts of this state. In *Daly* v. *Showers* (1937), 104 Ind. App. 480, 8 N. E. 2d 139, the opinion enunciated the following rule:

"Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another. Fraud has also been defined as any cunning or artifice used to cheat or deceive another. How-

ever, the wisdom of an exact legal definition of fraud has been questioned, and it has been stated that fraud is better left undefined, and some courts have said that the common law not only fails to define fraud but perhaps asserts as a principle that there shall be no definition. Further it is frequently stated that owing to the multiform character of fraud and the great variety of attendant circumstances no definition which is all inclusive can be framed, but each case must be determined on its particular facts. 26 C. J. sec. 1, p. 1059 and authorities there cited. Bigelow says, 'Fraud consists in endeavor to alter rights, by deception touching motives, or by circumvention not touching motives.' 1 Bigelow, on Fraud, p. 5."

Further, in the case of *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co.* (1939), 216 Ind. 35, 22 N. E. 2d 973, our Supreme Court stated:

"Fraud may be actual or constructive. Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. 26 C. J., p. 1061; *Gorham* v. *Gorham* (1913), 54 Ind. App. 408, 103 N. E. 16. . . . While fraud is never presumed, if the facts alleged show fraud, either actual or constructive, no positive averments of it are necessary. *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877."

The appellees contend that the amended complaint originally filed by the appellant fails to state a cause of action because it merely contains a series of epithetical expressions, irrelevant allegations, and conclusions of law. They (appellees) have cited authority to support their contention that allegations of this type will not be held sufficient to constitute a cause of action, if the complaint does not allege specific facts to establish the claim. In the case of

*Greathouse* v. *Board of School Commissioners of City of Indianapolis* (1926), 198 Ind. 95, 151 N. E. 411, the Supreme Court said:

> "A demurrer for want of facts admits as true all facts that are well pleaded, but it does not admit conclusions of law and does not admit all the conclusions which may be drawn from such facts by the pleader. Such words as are the mere expression of the pleader's opinion concerning the quality of the act, as a fact stated to have been done or the doing of which is contemplated, are not admitted as true and such expressions as 'wrongfully, unlawfully, arbitrarily,' cannot be considered in determining the sufficiency of the facts alleged in a complaint when a demurrer has been imposed for want of facts. Such expressions are merely vituperative or expressions of the opinion of the pleader as to the legality of the act so characterized. (Cases cited.)"

The appellees are relying upon the general rule hereinabove stated to support their contention that neither the trial court nor this court, in ruling upon a demurrer, should consider fact conclusions which can be drawn from the facts alleged. This court agrees with the appellees to the extent that conclusions of law and irrelevant allegations should not be considered by the lower court when it rules on the sufficiency of a complaint, but this court does not concur in the contention of the appellees that conclusions of fact should not be considered when ruling upon the demurrer. Burns' Annotated Statutes, §2-1005 (Acts 1913, ch. 322, §1, p. 850; 1915, ch. 62, §1, p. 123), pertinent provisions of which are quoted below, clearly states that such conclusions of fact can be considered by the court.

> " . . . all conclusions stated therein shall be considered and held to be the allegation of all the facts required to sustain said conclusion when

the same is necessary to the sufficiency of such pleading, paper or writing:..."

This section of the statute also notes the remedy which a defendant may use to require the plaintiff to allege facts to sustain the alleged conclusions of fact. The clause further states:

"Provided, That, as against conclusions, only the following remedy is given, that a motion may be made to require the party filing such pleading, paper or writing to state the facts necessary to sustain the conclusion alleged, said motion setting out wherein such pleading, paper or writing is insufficient. *If no such motion is made and ruled upon, all objections on account thereof are waived.* Burns' §2-1005, *supra.*" (our emphasis)

In the case at bar, the several appellees filed motions to strike parts of the amended complaint, and these motions were overruled by the lower court. Inasmuch as the appellees failed to file a motion to require the appellant plaintiff to allege facts to support the conclusions, this court is of the opinion that the appellees' objection to the lower court's consideration of the conclusions of fact which were alleged in the amended complaint has been waived under the previously quoted provisions of Burns' §2-1005, *supra.* The appellees did not plead correctly on this question at the trial court, and therefore have not laid a proper foundation for restraining the scope of consideration by this court on appeal of the conclusions of fact alleged by the appellant plaintiff in his amended complaint. The conclusions of fact which are contained in the amended complaint should properly be weighed by this court in its determination of the sufficiency of the amended complaint.

After close scrutiny of the amended complaint and second amended second paragraph with reference to the

precedent rules of law quoted herein, the court is of the opinion that the amended complaint states sufficient facts to withstand demurrer. Further, in referring to the case of *Cline* v. *Rodabaugh, supra,* and the rule of law regarding the particularity necessary in a complaint, this court believes that the facts stated properly inform the defendants of the nature of the action, and indicate the areas wherein the defendants must present a defense. This court has stated a principle which is properly referred to in considering a cause of action of the type being considered herein.. In the case of *Pierce* v. *Vansell* (1905), 35 Ind. App. 525, 74 N. E. 554, the court stated:

> "Considering all of the allegations of the pleadings, as disclosed by the record before us, we are of the opinion that they present a cause which appeals so strongly to equity that a trial should be had upon the merits, and the rights of the parties ought to be determined after hearing the evidence, and not upon demurrers to pleadings. *Brown* v. *Brown* (1894), 139 Ind. 653, 659."

This court is of the opinion that the above quoted rule should be accorded substantial consideration, so that the rights of parties to an action in equity are not improperly determined without a full hearing of the evidence. This court further is of the opinion that the case at bar demonstrates equitable considerations that clearly require a full hearing on the merits of the cause of action alleged in the amended complaint. We therefore hold that the trial court erroneously sustained said demurrers.

The appellees urge that the trial court properly refused to accept the tendered second amended complaint, third amended second paragraph and motion for change of venue because there was no cause of action pending when the above mentioned plead-

ings were submitted for filing. The appellees allege that the cause of action lapsed when the appellant failed to file amended pleadings by the date stated in his letter. However, the record of this case does not show that the trial court entered upon the docket any ruling stating that the appellant must file amended pleadings by a certain date. Therefore, the position of the appellee is not wholly correct. Judge Flanagan, of our Supreme Court, speaking in the opinion in the case of *Doughty et al.* v. *State Dept. of Pub. Welf. et al.* (1954), 233 Ind. 475, 478, 121 N. E. 2d 645, said:

> "*A demurrer, sustained, does not take out the complaint. The ruling is only that the complaint as it stands is defective. The complaint stays,* and the pleader has an absolute right to keep it there and amend it. §2-1010, Burns' 1946 Replacement; *Ewing et al.* v. *Patterson* (1871), 35 Ind. 326; *Guthrie* v. *Howland* (1905), 164 Ind. 214, 224, 73 N. E. 259; *Royal Ins. Co.* v. *Stewart* (1921), 190 Ind. 444, 455, 129 N. E. 853." (our emphasis)

The absolute right to plead over, as set forth above, has recently been reaffirmed in the case of *Gibson et al.* v. *City of Indianapolis et al.* (1962), 242 Ind. 447, 179 N. E. 2d 291. Judge Shake, in an opinion rendered by the Indiana Supreme Court has also stated this rule with more particularity in the case of *State ex rel. Daily* v. *Harrison, Special Judge* (1939), 215 Ind. 106, 18 N. E. 2d 770, in which he stated:

> "After a demurrer to a complaint has been sustained, and after *the time granted to amend has expired,* and there is no request for further time, no cause of action is pending upon which an issue of law or of fact may be joined, and nothing remains for the court to do other than to enter a formal judgment." (our emphasis)

This rule, as stated, is uniquely applicable to the case

in question. As previously stated, there was no ruling of the trial court limiting the time for filing an amended pleading. Therefore, the judgment entered on October 8, 1960, was erroneously rendered. This reasoning is supported by the case of *The Chicago and Southeastern Railway Company* v. *Adams* (1895), 12 Ind. App. 317, 39 N. E. 877, which stated:

> "The court, upon overruling the demurrer, entered final judgment against appellant without ever having entered any rule to answer or made any order against it to plead over, and without any refusal to plead over. This was not the correct practice. (Cases cited)."

This court must iterate the above stated rule, and the recognition of this rule necessarily requires that we determine that the procedure of the trial court was improper, and jeopardized the interests of the appellant. There was no ruling by the trial court that the appellant was required to plead over by a certain date, and therefore no limitations upon the appellant's absolute right to plead over were properly established. A letter addressed to the trial court by the appellant's counsel stating an intention to plead over by a certain date cannot replace the necessity of an entry of such a ruling by the trial court. Therefore, we are of the opinion that the rendering of judgment on the demurrers was erroneous, and the judgment should be set aside.

Inasmuch as the demurrers were improperly sustained, and the judgment was rendered prematurely, the cause of action was not dismissed nor were the issues closed. The motion for change of venue from the county, presented by counsel for the appellant, should have been granted inasmuch as the filing was within the time period set forth in Supreme

Court Rule 1-12B, the pertinent provisions of which are set forth below:

"In all cases where the venue of a civil action may now be changed from the judge or the county, such change shall be granted upon the filing of an unverified application or motion therefor by a party or his attorneys: Provided, however, a party shall be entitled to only one change from the county and only one change from the judge.

In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such application for change of judge or change of venue shall be filed not later than ten (10) days *after the issues are first closed on the merits, or if the issues* are closed without answer by operation of law, . . . " (our emphasis)

We note from the record that the motion for change of venue was denied but not stricken. The appellees state as a principle of law that "where a demurrer to a complaint is sustained and the plaintiff elects to file an amended complaint, no question of error in the sustaining of the demurrer can be raised on appeal". Burns' Indiana Statutes Annotated, §2-1010; *Williams* v. *Williams, Admr.* (1940), 217 Ind. 581, 29 N. E. 2d 557; *Kimble* v. *Jolly* (1940), 217 Ind. 698, 30 N. E. 2d 463; *Inter State Motor Freight System* v. *Henry* (1942), 111 Ind. App. 179, 38 N. E. 2d 909. This is indeed a novel theory for we are of the opinion that when the court sustained the motion objecting to the filing of said pleadings and motion for change of venue that in practical effect and for all purposes of the record, the court was rejecting the filing of said amended pleadings. Therefore, we are of the opinion that the trial court had no right to consider or rule on the appellees' several motions filed September 12, 1960, after a motion for a change of venue from the county had been

filed particularly *in the absence of any order* book entry directing the appellant *to plead further or amend by a date certain in term time prior thereto.* It is undisputed that said motion for a change of venue was filed in the office of the clerk of the Jasper Circuit Court on June 27, 1960, in vacation, before the September, 1960 term of said court. It is also undeniable that the trial court must have concluded that said motion for a change was properly before the court as a matter of filing on the first day of the next succeeding term of said court, if not, there would have been no necessity for the court to make *an order book entry denying said motion for a change on October 8, 1960.* We hold that said motion was properly on file in the Jasper Circuit Court as of September 12, 1960, the first day of the September, 1960 term of said court. In *State ex rel. Whitewater, etc.* v. *Hoelscher, Judge* (1935), 208 Ind. 334, 196 N. E. 1, the court stated:

> "We do not take seriously the contention that the trial court had a right to strike out the objections to the report after the motion for the change of venue was filed, and then refuse to grant the change because there was no issue pending . . . If the affidavit for a change from the county complied with the statute, the court was divested of jurisdiction to take any further action except to grant the change."

The precedent case law regarding the granting of changes of venue has uniformly held that the duty to grant a motion for change of venue is mandatory upon the court if such motion is timely and is presented properly. *State ex rel. Johnson* v. *Cody, Judge* (1937), 212 Ind. 247, 8 N. E. 2d 971; *State ex rel. Lindsey* v. *Beavers* (1947), 225 Ind. 398, 75 N. E. 2d 660; *State ex rel. Kealing* v. *Clay Circuit Court* (1934), 207 Ind. 259, 192 N. E. 423. Therefore, inasmuch as the appellant's

motion for change of venue from the county satisfies the restrictive qualifications of Supreme Court Rule 1-12B, *supra,* we hold in the instant case that the trial court, in any justiciable matters yet to be disposed of under the state of the record, was divested of any further jurisdiction to act except to grant said motion for a change of venue from the county. *State ex rel. Whitewater, etc.* v. *Hoelscher, Judge, supra.*

This cause is therefore remanded to the trial court with instructions to set aside the judgment previously entered in favor of the appellees on October 8, 1960, to overrule the several demurrers of the defendants appellees and to sustain the motion for a change of venue from the county and for further proceedings not inconsistent with this opinion.

Mote and Pfaff, JJ., concur.

Kelley, J., not participating.

## ON PETITION FOR REHEARING.

HUNTER, P. J.—The appellees, as a basis for sustaining the petition for rehearing, have raised the issue of the appellant's failure to comply with the terms of Section 70 (b) of the Bankruptcy Act, 11 U.S.C.A. 110 (b), which requires that a Trustee in Bankruptcy shall elect to assume or reject all executory contracts of the bankrupt within 60 days, or the contracts are deemed rejected. At the time of the initiation of the bankruptcy proceedings of Northern Indiana Oil Company, Inc., Charles L. Surprise was appointed Trustee in Bankruptcy, and he served in that capacity during the 60 day period set forth in Section 70(b) of the Bankruptcy Act, *supra.* As stated in our opinion the record fails to show that said trustee elected to assume the executory contracts, and the reasonable

presumption is that the trustee thereby determined that the contracts should not be assumed. However, the plaintiff-appellant, who served as a subsequent trustee for the bankrupt company, has alleged in the amended complaint filed in the cause, that the original trustee, Charles L. Surprise, participated in the conspiracy by allowing Robert B. Fletcher to appropriate the business as his own, and by further failing to notify the bankruptcy court of assets of the bankrupt company in the possession of Mr. Fletcher which should have been listed on the schedule.

Inasmuch as the amended complaint contained allegations that Fletcher and Surprise conspired to take advantage of the bankrupt company by allowing the 60 day period to lapse, this court is of the opinion that that issue should also be decided in a full trial on the merits of the complaint. We recognized and supported the position of the appellant that equity will not permit the parties to retain the benefits of the alleged fraud, and this doctrine, we think, is applicable to the case at bar. This position is not to be interpreted as meaning that this court is attempting to thwart the functioning of the Bankruptcy Act, but merely means that such provisions should not be utilized as a shield to protect the perpetrators of an alleged fraud on creditors and interested parties.

The petition of appellees for rehearing is denied.

NOTE.—Reported in 196 N. E. 2d 422. Rehearing denied 197 N. E. 2d 183.